## HILL v. WALTERS

(No. 2137; March 12, 1940; 100 Pac. (2d) 98)

For the appellant, there was a brief by *Hill* and *Hill* of Buffalo, Wyoming, and *Wilson* and *Jackson* of Burlington, Iowa, and oral argument by *Mr. Burton S. Hill.*

For the respondent, there was a brief and oral argument by *Burt Griggs* of Buffalo.

RINER, Chief Justice.

Another automobile collision is responsible for this litigation wherein in the district court of Johnson County Burton S. Hill, administrator of the estate of Amos J. Thornber, as plaintiff, and usually so mentioned hereinafter, sought a recovery of damages for alleged negligence against Fred J. Walters, as defendant, who also will be thus designated where his individual name is not used.

The negligence charged in plaintiff's petition was, to put it briefly, that the defendant on August 21, 1937, moving in a southerly direction, drove his car to the left of the center line on Federal Highway No. 16, about six miles northeast of the Town of Buffalo in Johnson County, Wyoming, when plaintiff's intestate was driving his automobile northerly on the right and easterly side of said highway, with the result that a collision between the two cars ensued, and Thornber suffered severe bodily injuries, which subsequently caused his death on October 24, 1937. The defendant's answer was in substance a general denial, alleged contributory negligence on the part of Thornber and that the latter was suffering from physical ailments of long standing, which were solely responsible for his demise, and that the collision aforesaid had no connection with it. Issues in the case were completed by plaintiff filing his reply thereto.

The cause was tried to the court without a jury, and plaintiff failed to succeed in the action, the court finding that although the defendant Walters was negligent in the operation of his car "the proximate cause of the accident, upon which this action was based, was the contributory negligence of the plaintiff's intestate, and by reason thereof plaintiff" could not recover. Judgment was accordingly rendered for the defendant. The plaintiff by direct appeal asks a review of the record by this court.

Summarized the facts developed on the trial, in view of the result reached by the trial court and which should be considered at this time, are:

Between five and six o'clock in the afternoon of August 21, 1937, the defendant was driving a Ford V-8 coupe on the highway above mentioned, in a southerly direction, from his ranch to the Town of Buffalo, aforesaid. He was at the time accompanied by a youth, one Marvin Mitchell, who had been employed on Walters' ranch for some time. The weather was clear, darkness had not yet come, and visibility conditions were excellent. Some six or seven miles from Buffalo Walters undertook to pass another car, possessing a foreign license plate, this car being pointed in the same direction in which he was traveling. As to whether this vehicle was standing still or moving the testimony was in conflict. The highway mentioned at the place indicated is straight, with about seven-tenths of a mile of straight, level expanse on either side of where Walters understood to go around the other automobile. Mrs. Thornber testified that both she and her husband first saw the Walters car nearly a mile distant. The testimony concerning the speed of the Walters car as it endeavored to pass the foreign automobile is also in conflict, Walters stating that he was driving thirty-five miles an hour, while Mitchell, his companion, testified that he was traveling seventy miles per hour, and this statement was corroborated by Mrs. Thornber's estimate of its speed.

At this time also Thornber, with his wife on the seat beside him, was driving their car, a coupe Lincoln-Zephyr automobile, along this highway, on the right or easterly side thereof, in a northerly direction, on their way from the Town of Buffalo to the Town of Gillette, Wyoming. The testimony as to the speed at which they were traveling at the time of the accident is another phase of the evidence sharply in conflict. Mrs. Thorn-

ber's testimony was to the effect that her husband usually drove about fifty miles per hour; that when about one thousand feet distant from the Walters car and the foreign vehicle, they noticed that Walters was endeavoring to pass the latter and "both were headed for us"; that the Walters car and the one it was trying to pass "both seemed to be coming at a rapid rate of speed"; that they just seemed to be abreast of each other; that her husband then took his foot off the accelerator of the motor and that this maneuver slowed the speed of their car to thirty or forty miles an hour; that when they were about three hundred fifty feet from the other two cars, her husband, realizing that Walters did not intend to drop back and turn to his (Walters') right, applied his brakes, and at the time of the collision the Thornber car was barely moving. Militating against this testimony with other evidence is: That of surveyor Eder to the effect that on October 14, 1937, when they were pointed out to him by Walters, the skid marks of the tires of the Thornber car were plainly visible; that he measured them and these measurements disclosed that the left wheels of that car slid a distance of ninety-two feet to the point of collision and the right wheels slid a distance of fifty-seven feet; that at the point where the skid marks stopped the oiled surface of the highway was twenty-one feet wide by actual measurement; that about the first ten feet of the longer skid mark, i. e. the southerly end of it, was not "quite as plain as from there on, and the shorter skid mark was very plain, or very deep, from the beginning to the end." Other testimony indicated that these skid marks remained visible on the road surface for many months thereafter; and expert opinion evidence was given in the case to the effect that the Thornber car was traveling between sixty and eighty miles an hour, immediately before its tires "made their first impression upon the highway."

There is evidence appearing in the record also that the end of the skid of the right wheels of the Thornber car on the side nearest the edge of the oiled surface of the highway was exactly the same distance from the easterly edge of the oiled surface aforesaid as it was ninety-two feet away when the tires of the Thornber automobile commenced to mark the surface of the roadway, though the tracks of the wheels during the course of their skid had veered slightly to the left; that this distance to the nearest skid mark from the edge of the roadway was three and one-half feet; that the graveled shoulder of the highway at this point was approximately two and one-quarter feet wide, making the over-all distance from the right-hand skid mark five and three-quarters feet; that the over-all width from the outside of the front fender to the outside of the opposite front fender is about seventy-one and one-half inches on the Zephyr car, and the corresponding width on the Ford car was sixty-nine and one-half inches; that the collision between the two cars was more of a lap than one of "head-on"; that this lap was about half way on each car; that when the collision occurred Walters' car was just about half way over the center of the road on the west side.

Walters testified that he did not see the Thornber car until for the first time he observed the sun on its headlamps when about thirty feet distant; that when he was opposite the car with the foreign license,— which vehicle was not moving,—that he (Walters) was watching that car and his own right-of-way; that he does not suppose he looked as he turned to his left to go around this car. His companion, Mitchell, stated in his testimony that he did not see the Thornber car at all before the impact between the two vehicles took place. Evidence was also adduced that Dr. Thornber after the collision happened stated he saw the Walters car quite a ways down the road before the accident,

saw it approaching and noticed it pass another car; that he applied his brakes but was unable to stop in time to avoid the accident; that he (Thornber) told his attending physician shortly after the accident happened that he (Thornber) could not "turn to the left to get out of the way because there was a truck there and he then figured that his car was much heavier than the approaching car, so he said he decided to slam on his brakes and take the impact in that he would be less seriously damaged by that impact on account of having the heavier car."

Under-sheriff Brock, who brought Dr. Thornber to the Town of Buffalo immediately after the accident, testified on direct examination in response to an inquiry by counsel for the plaintiff as to whether Thornber gave any explanation at that time as to how the accident happened, that on the way back to town Thornber said that "he saw Mr. Walters' car coming and apparently he didn't see him, that he seemed to be looking at a car that was on the highway, and he says 'I don't think he saw us, and I set my brakes.'"

Section 72-203 Wyoming Revised Statutes, 1931, provides so far as material here:

"No person shall operate a motor vehicle on any public highway outside of a city or town at a speed greater than is reasonable and proper having due regard for other traffic and the intended use and condition of the road, nor at a rate of speed such as to endanger the life or limb of any person or animal. A speed in excess of thirty-five miles per hour shall be prima facie evidence of failure to operate a motor vehicle at a speed that is reasonable and proper. * * * * Every person shall at all times have the motor vehicle operated by him under absolute control. Upon approaching an intersection of highways, or a bridge or a sharp curve, or a steep descent, or another vehicle or an animal, or a person, the person operating the motor vehicle shall give a timely signal with his bell, horn, or other warning device, and shall reduce the speed of such motor vehicle to a reasonable rate, and

shall not exceed such speed until entirely past such intersection, bridge, curve, descent, vehicle, animal or person. * * *"

The pertinent portion of Section 72-204 Wyoming Revised Statutes, 1931, is as follows:

"* * * * Whenever any person, traveling with any vehicle or conveyance on any road or public highway in this state, shall meet another vehicle or conveyance traveling in an opposite direction it shall be the duty of the driver of such vehicle or conveyance to turn promptly to the right of the center of the traveled road and to remain on the right of the center of the traveled road until such vehicle or conveyance has passed. * * * *"

The opening statement in appellant's brief is phrased in this language:

"As we understand it, the question we have to decide is:

"As a matter of law, was the plaintiff's intestate, Dr. Amos J. Thornber, guilty of contributory negligence in the automobile collision which took place between the defendant, Fred J. Walters, and the testator, on August 21, 1937, approximately seven miles east of Buffalo, Wyoming, on Federal Highway No. 16, as to bar a recovery from the defendant, who was guilty of negligence."

We approve this statement for the most part, except that, as pointed out in the opinion filed in the recent decision of this court in Rienecker v. Lampman (Wyo.) 96 P. (2d) 561, the question of whether there was contributory negligence on the part of the plaintiff is generally one of fact, and where the evidence is conflicting concerning that matter, and there is substantial evidence to support the conclusion reached, the trier or triers of fact ordinarily settle the point so far as this court is concerned. It is unnecessary to repeat here the authorities reviewed in connection with that decision.

It is clear from the rather extended review of the evidence in this case supplied above that there was

such conflict therein as to authorize the district court of Johnson County to find as it did, as quoted above, and that such finding was made upon substantial evidence. The trial court might very well conclude, if it believed the testimony of certain of the witnesses who appeared in the cause—as it had the right to do after seeing and hearing them—that Dr. Thornber did not have that control over his car which the law requires in approaching and passing another vehicle; that the speed of the Zephyr car was not reasonable under the circumstances shown, and that the negligence of its operator in failing to turn to the right, contributed proximately, in conjunction with the negligence of Walters, to the collision of the two vehicles.

Indeed, even if Mrs. Thornber's testimony alone be taken with that of the garage man, a witness summoned by the plaintiff, together with the mathematical measurements appearing in the case, as set forth above, it is extremely easy to reach the result embodied in the judgment now in question. There was ample room for Thornber to pass safely and on the right side of the highway the other two cars, if he had had his car under such control as Mrs. Thornber asserted he did, as he approached the place where the collision occurred. She stated, it will be recalled, that at the instant of collision their car was barely moving. The garage man, McCarthy, testified as to the overlap of the cars when they struck each other, and the mathematical measurements of highway width, over-all width of cars, location of wheel skid marks of the Thornber car with relation to the highway's easterly edge, supply the other necessary elements to reach the suggested conclusion.

It is urged that Dr. Thornber was involved in a sudden emergency and that the rule in such cases may be invoked in defense of his operation of the Zephyr car. We do not agree. As indicated in Henderson v.

Land, 42 Wyo. 369, 295 P. 271, before that rule can have any application, it must be clear that the emergency existed through no negligence of the person in peril and that the resultant injury could not have been prevented after the peril had passed. In the case at bar if there was any emergency there was ample evidence for the district court to deduce that Thornber caused it.

The last clear chance doctrine is also relied upon by appellant. But that rule, as outlined in Rienecker v. Lampman, supra, is not, as we view the record, applicable here. In this case both Walters' testimony and the statements of Dr. Thornber himself indicate that Walters did not see Thornber in time to avert the collision. He did not know of Thornber's danger until it was too late for him to act. If it be assumed that Walters should have seen the Zephyr car, as very likely he should, still under the testimony in the record, he had reasonable grounds for concluding that there were ample means within Thornber's control to have avoided the accident by turning to the right, as hereinabove pointed out.

The doctrine of comparative negligence does not prevail generally. 45 C. J. 665 and cases cited in notes 77 and 78; 20 R. C. L. Section 119, Page 147, and cases cited in notes 10 and 11.

Other questions regarding the admissibility of evidence are argued, but as the trial was to the court, the principles announced in Williams v. Yocum, 37 Wyo. 432, 445, 263 P. 607, and Alaska Development Co. v. Brannan, 40 Wyo. 106, 119, 275 P. 115, are applicable. We accordingly affirm the judgment under review.

*Affirmed.*

KIMBALL and BLUME, JJ., concur.