RAY HOWERTER, APPELLEE, V. WALLACE A. OLSON ET AL., APPELLANTS.

17 N. W. 2d 483

FILED FEBRUARY 2, 1945. No. 31839.

*Gaines & Shoemaker,* for appellants.

*Wear, Boland & Nye, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

This action, involving only property damage, arises as the result of a collision between a gasoline transport unit owned by the plaintiff, and a truck owned by the defendants. It was tried in the district court where a jury found

for the plaintiff. Defendants appeal. We affirm the judgment of the trial court.

The accident occurred about midafternoon, May 7, 1943, on U. S. Highway 20-87 just west of the city of Douglas, Wyoming. The highway there had a restricted speed limit of 35 miles per hour. About a quarter of a mile west of the point of collision, the highway came over a hill and for some distance east had a down grade of 5.5 per cent, then leveled out somewhat into an average down grade of 2.5 per cent, to the point of the accident. This highway had a two-lane oil-paved surface, averaging 20 feet in width, with gravel shoulders on either side. Just west of the point of the accident a graveled county road intersected the U. S. highway at right angles and from the south. The collision occurred just east of this intersection. There were no obstructions to visibility from either highway to the other.

Plaintiff's unit consisted of a tractor and a detachable trailer tank. The tractor was painted red and the tank white, with black lettered signs. At the time of the accident, the tank contained over 4,000 gallons of gasoline, and the entire unit loaded weighed over 19 tons. Defendants' unit was a light 3/4 ton truck, carrying a small load of building material.

Plaintiff's unit was being driven east on the U. S. highway with only the driver in it. Defendants' truck with a second person in it, was driven onto the U. S. highway from the south. It turned east and had proceeded to a point about 75 feet east of the intersection of the center of the county road with the center of the U. S. highway, when plaintiff's unit collided with it. The right front of plaintiff's tractor struck the left rear of defendants' truck. The impact width was 2 feet, 8 inches. The vehicles went on down the highway a distance of 300 to 350 feet. The tractor and the trailer separated during the movement. The tractor and defendants' truck stopped on the south side of the highway. The trailer tank overturned and "rolled" about 75 feet before coming to a stop on the highway. The tractor was wrecked beyond repair. The trailer tank was

badly damaged but repairable. The weather was cloudy and the oiled highway was dry. The above facts are not in dispute.

There is a dispute as to whether there was a yellow line painted, solid or broken, down the center of the pavement.

There is some dispute as to whether the highway "stop" sign was standing on the right of the county highway just south of the intersection. Defendants' driver testified the stop sign was there. There is no dispute but that both drivers knew that a stop sign had been erected there.

There is a direct dispute as to whether or not defendants' truck stopped before entering the U. S. highway. Plaintiff's driver testified that it did not. Defendants' driver testified that he stopped the truck before entering the highway. This evidence will be outlined later herein.

There is a dispute as to the speed of the two vehicles. Plaintiff's driver testified that his speed at about 750 feet west of the intersection was from 30 to 35 miles per hour; that he slackened his speed and when about 50 feet west of the intersection, was going at a speed of 25 to 30 miles per hour; that just before the collision, he set all his brakes and was going from 15 to 20 miles per hour when the collision occurred. The patrolman interviewed plaintiff's driver at the hospital after the accident. He testified that the driver told him his speed was about 45 miles per hour "prior to the accident or when the danger was first noticed * * * ." Defendants offered the testimony of a witness to the effect that from a point near the intersection, he saw plaintiff's truck about a quarter of a mile west, watched it coming down the highway for 100 feet and that its speed was then 60 miles per hour. Plaintiff's driver testified that he first observed defendants' truck about 500 feet south of the intersection; that it was then going from 25 to 30 miles per hour; and that when it entered the highway, it was going 20 miles per hour. Defendants' evidence was that their truck was going about 10 miles per hour when hit.

The testimony as to how and where the accident occurred is not conflicting. Plaintiff's driver testified that when de-

fendants' truck came upon the highway in front of him, it did so on the right-hand side of the road and started east on its proper side; that plaintiff's driver then turned to the left to pass defendants' truck, blew his horn repeatedly, and got entirely over on the left-hand side of the oiled portion of the highway, when suddenly defendants' truck "lurched" over in front of him when they were a matter of a few feet apart. Plaintiff's driver then set his brakes, got to the far (north) side of the highway, so that his left tractor wheels were on the gravel. He could not avoid the collision. The impact occurred, the door of the tractor opened and he was thrown out.

The under-sheriff and the highway patrolman came to the scene at separate times thereafter. They are not contradicted on their evidence as to what was visible. There were dark, heavy skid marks all well over on the north half of the pavement, beginning about 15 to 25 feet west of the point of impact, as they determined it, and continuing to where the trailer turned over and the tractor left the pavement. There were lighter marks beginning at the point of impact and continuing down the pavement to where defendants' truck left the pavement. They located the point of impact from the skid marks and glass. It was 75 feet east of the intersection, and on the north half of the highway. The patrolman made exact measurements. The oiled surface at the point of impact was 21 feet, 9 inches wide. As shown by the skid marks, the right wheels of the defendants' truck were 8 feet, 7 inches from the edge of the pavement on the south side, and 12 feet, 3 inches from the north edge of the oiled surface, and the left wheels were 7 feet, 2 inches from the edge on the north side.

Milton J. Olson, one of the defendants, arrived at the scene of the accident about five minutes after it happened, and was there when the patrolman arrived. He placed the point of impact at about 75 to 80 feet east of the intersection. He was asked where the point of impact was with reference to whether it was north or south of the center of the road. He testified that there was a definite marking as

to where the skidding first occurred; and that "at the time" he could not quite agree with the patrolman that the lighter marks on the pavement were made by "our truck," the disagreement being that they could not establish "at the time whether the truck was picked up and then set down at that point and the marks start from there. There was no visible markings we could see at the time as to just what the route was before the impact." When asked on what side of the highway the collision occurred, he answered: "I would say it wasn't in the middle—it was practically—it was on the right side of the highway, mostly on the right side of the highway." And "From the angle of the skid marks it was a little to the left of the highway—or the center line of the highway, * * * ." And later on, "The point of impact showed a darker line, but not what you would call a definite skid mark" but "a mark made by" the tires of defendants' truck.

On direct examination, the passenger in defendants' truck testified: " * * * we was on our side of the road, I am sure" and again he testified that he thought" they were on their own side. But on cross-examination he testified that he was not positive this accident happened on the south side of the road. He further testified that he gave the county attorney an affidavit stating: "I don't know what side of the road we were on although I think we were on our side."

Defendants' driver was asked on direct examination where he was on the highway when he was hit. He answered: "I believe I was on my side. * * * My right-hand side." On cross-examination, he testified: "I don't think it was past the center." He further was examined with reference to a chart that some one had drawn, purporting to show the position of the two vehicles at the time of the impact. He then was asked to mark the center of the highway. He did so, showing his truck to be partly on the north half of the highway, but he "couldn't say" if it was correct.

The evidence shows that defendants' driver, while not positive as to whether he was across the center of the road,

was testifying as to where he was on the highway when he entered and turned to go east. Plaintiff's driver puts him on the south side at that time. It further is noted that there was no denial of plaintiff's testimony that just before the impact the defendants' truck suddenly turned or "lurched" across the center of the highway and into the path of the transport on the left-hand side, nor is there any denial of plaintiff's driver's testimony that he could not then avoid the collision.

Defendants offered the testimony of three witnesses as to the events immediately preceding the accident. A foreman of defendants testified that, in a car headed south, he met defendants' truck about 75 to 100 feet south of the intersection, and there stopped the driver briefly and gave him work instructions. The man in the truck with the driver puts this meeting at the same point. In an earlier statement, the foreman located the point of this conversation at 200 feet south of the intersection. The driver puts the point of meeting 10 to 15 feet south of the intersection and opposite the stop sign. After this brief conversation, the driver testified that he drove into the highway and turned east. He did not testify that he stopped again before entering the highway. Therefore, according to the driver, whether he stopped before entering the highway depends upon where that conversation took place. Defendants' driver further testified that from the time he started his truck, after talking with the foreman, until the accident "wasn't over three or four minutes." According to his testimony, he did not drive more than 100 feet during that time.

The foreman testified that after this conversation, he looked north and west, preparatory to turning around to go back to the highway. It was at that time he saw plaintiff's transport coming concerning which he gave the testimony as to speed. He then turned his car around and was facing north when he saw the accident. He testified that the defendants' truck when hit "looked like it raised up off the pavement about three or four feet and on down the road." The rider in defendants' truck testified that he did not look

up or down the road and saw and heard nothing before the accident. The driver testified that he looked in both directions, saw a car coming over the hill "way up to the left," drove onto and east on the highway, and saw and heard nothing more until the collision.

The defendants offered and there were admitted in evidence parts of the decisions in *Hill v. Walters*, 55 Wyo. 334, 100 Pac. 2d 98, and *Pierce v. Bean*, 57 Wyo. 189, 115 Pac. 2d 660, supporting the propositions that "The doctrine of comparative negligence does not prevail generally" in Wyoming, and that contributory negligence on the part of the plaintiff defeats a recovery. Defendants also placed in evidence parts of the opinion in *Loney v. Laramie Auto Co.*, 36 Wyo. 339, 255 Pac. 350, to the effect that where a danger " * * * was patent and obvious, so that a man of ordinary prudence should have known of it, he cannot recover." Defendants also placed in evidence section 26-101, Wyoming Revised Statutes 1931, with reference to the adoption of the common law in Wyoming.

Plaintiff offered in evidence parts of the above opinions of the supreme court of Wyoming, supporting the proposition that the issue of negligence or contributory negligence is ordinarily one to be determined by the jury.

The defendants requested the court to instruct the jury that the evidence did not show sufficient negligence on the part of the defendants to sustain a verdict for the plaintiff, and, in any event, as a matter of law, the evidence established contributory negligence of the plaintiff which was the proximate cause of the accident, and that they should find for the defendants. The court refused to give the requested instruction. That refusal is defendants' first assignment of error.

This contention is bottomed on the proposition that Wyoming does not have a comparative negligence statute and that negligence on the part of the plaintiff which contributed to an accident defeats recovery, and further that under the Nebraska decisions (Wyoming not having spoken on the matter), plaintiff's negligence was such as to bar recovery as a matter of law.

As we see this situation, the speed of plaintiff's unit was not an element in the cause of this accident. The speed of 60 miles per hour was fixed at a point a quarter of a mile away, and the evidence is undisputed that it was reduced as stated herein. The speed which the patrolman testified was fixed by plaintiff's driver as at 45 miles per hour was "when the danger was first noticed," and again the undisputed evidence is that the brakes were being applied and the speed reduced after that time. The distance the vehicles traveled after the impact is likewise not controlling as evidencing speed before the impact, particularly in view of the undisputed testimony of the patrolman that in his opinion the driverless tractor had operated after the accident. Neither do we consider of controlling importance the evidence as to the speed of defendants' truck when it entered the highway, nor whether or not there was a stop sign there, nor whether or not defendants' truck stopped before entering the highway.

So far as determining the proximate cause of this accident, we think a line can be drawn across the highway just east of the intersecting road, and that only the evidence as to what happened thereafter should be considered.

The proximate cause of this accident and its only cause occurred after the defendants' truck was on the highway. It was then proceeding east on the highway on its proper side. Plaintiff's unit moved to the left of the highway to pass as he had a right to do, and where, without dispute, there was ample room for him to pass. Excessive speed at that time is not shown. All the testimony is that the plaintiff's truck was on the north side of the highway well beyond the center line; that it was there before, at and after the impact is conclusively shown by the pictures of the skid marks and the testimony of the witnesses. There is no evidence to the contrary. Plaintiff's unit would not and could not have hit the defendants' truck had it not been on the left or north half of the highway also. Defendant, Milton J. Olson, admitted that the skid marks of his truck first appeared on the north half of the highway, but seemed to have

had the theory "at the time" that somehow the impact of the tractor against his truck picked it up and set it over and down on the north side of the highway. Just how that could happen in the face of the undisputed testimony that plaintiff's tractor was then well to the north of the center is not explained. Had the defendants' truck remained on its own half of the road, this accident would not have happened. The accident occurred because the defendants' truck moved over onto the left side of the highway into a place of danger and at a time when it was impossible for plaintiff to prevent hitting him, although in an effort to do so, he set his brakes and skidded his wheels for 15 to 25 feet before the impact.

This obviously is not a case calling for an application of the rule that it is negligence as a matter of law for a motorist to drive a motor vehicle on a public highway at such a rate of speed that it cannot be stopped or turned aside in time to avoid an obstruction within the range of his vision ahead. *Most v. Cedar County,* 126 Neb. 54, 252 N. W. 465. As we see this evidence, it shows without dispute that the sole and proximate cause of this accident was the act of defendants' driver in not seeing or looking to see what was to be seen behind him, and not hearing what was to be heard, and driving suddenly upon the north half of the highway and into the path of plaintiff's unit.

The trial court did not err in refusing to give the proffered instructions.

Defendants' second and third assignments are that the court erred in its instruction to the jury as to speed and with reference to the issues, claiming that the court failed to instruct as to the defense of improper braking equipment. The rule applicable here has been variously stated and, at times, not too exactly applied. We think the proper rule is: Where the jury arrive at the only conclusion that the evidence would sustain and where, in the light of the pleadings and the competent evidence introduced, the trial court should have directed a verdict in favor of the prevailing party had it been requested, this court will not consider

errors assigned by the defeated party complaining of instructions given or refused relating thereto. *U. P. Steam Baking Co. v. Omaha Street Ry. Co.*, 4 Neb. (Unof.) 396, 94 N. W. 533; *Buzzello v. Sramek*, 110 Neb. 262, 193 N. W. 743; *Stiefler v. Miller*, 120 Neb. 6, 11, 231 N. W. 153, 232 N. W. 620; *Nielsen v. Yellow Cab & Baggage Co.*, 130 Neb. 457, 265 N. W. 420. Since the jury arrived at the only conclusion as to liability that the evidence would sustain, error, if any there was, in the giving of instructions relating thereto, was not prejudicial to the defendants.

Defendants' next assignment of error is that they offered and the trial court refused to admit in evidence a statute of the state of Wyoming, which provided that the brakes should be able to stop a vehicle in a fixed distance when going at a certain speed, upon pavement meeting certain specifications as to quality and grade. Plaintiff's vehicle was not shown to have been put to that test, nor were the road conditions at the time of the accident within the specifications of the statute. As we view this record, the condition of the brakes on plaintiff's unit not being a proximate cause of, nor contributing to the cause of, the accident, error, if any, in the ruling was not prejudicial.

Defendants' final assignment of error is that the trial court erred in sustaining an objection to the admission of an answer of the patrolman. His testimony was by deposition. He was asked as to what plaintiff's driver said while in the hospital about the brakes. His answer in part was that the driver had said "something was wrong" with the condition of the brakes and "he didn't exactly state what it was, but it seemed that the brakes on the semi were holding better than the brakes on the tractor unit." The quoted language is obviously the conclusion of the witness. The court properly refused its admission.

The judgment of the trial court is affirmed.

AFFIRMED.

The following opinion on motion for rehearing was filed June 22, 1945. *Former opinion set aside and judgment*

19 N. W. 2d 346

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

An opinion was previously adopted in this case which₃appears *ante,* p. 507, 17 N. W. 2d 483. A motion for rehearing was presented. On reconsideration we have arrived at conclusions which conflict with the former opinion. The statement of the case in the former opinion without its conclusions is correct but we deem it advisable to make a brief restatement herein in order that the portion of the opinion which shall follow may be intelligible.

This is an action for damages by Ray Howerter, plaintiff and appellee, against Wallace A. Olson, Milton J. Olson, Myron S. Olson and Olson Bros., a copartnership, defendants and appellants. The action grows out of a collision between an oil transport truck owned by plaintiff and a pick-up truck owned by the defendants. The date of the collision was May 7, 1943, and the place a few miles west of Douglas, Wyoming, on U. S. Highway 20-87. At the point of the collision the grade of the highway was 2.5 per cent, with the decline to the eastward. About a quarter of a mile west the grade was 5.5 per cent. There was a leveling off between these two points. This was a two-lane east and west arterial highway with oil-paved surface and was protected by stop signs at intersecting roads. It appears that

there was a yellow broken line down the center of the paving although this is disputed. A short distance west of the point of the collision was a county road entering from the south. At this intersection there had been a stop sign the purpose of which was to cause vehicles coming from the south to stop before entering upon this highway. Whether the stop sign was in position at the time involved herein is not made certain by the evidence. The paving at this point was about 20 feet in width. Beyond the paving on both sides were gravel shoulders. Plantiff's truck empty weighed over 14,000 pounds and at the time of the collision was carrying over 4,000 gallons of gasoline. The unit was composed of a tractor with a detachable tank on a separate carriage. Defendants' truck was 3/4 ton capacity and was carrying a small load of building material. Both trucks at the time of the collison were traveling in an easterly direction on U. S. Highway 20-87. The collision was between the rear end of defendants' truck and the front end of plaintiff's. It occurred about 75 feet east of the point where the road from the south enters U. S. Highway 20-87.

Substantially the claim of plaintiff is that when his truck was coming eastward under control and yet back of the intersection of the road from the south with U. S. Highway 20-87 his driver saw defendants' truck come out from the south without stopping before entry and turn east on the right side of the highway; that thereupon his driver pulled over to the left of the center with the purpose and intention of passing; that when the two trucks were close together defendants' driver suddenly and without warning pulled over to the left of the center and in front of plaintiff's truck; that plaintiff's driver immediately set his brakes which he was using theretofore and sounded his horn but no sufficient time or opportunity was afforded to avoid a collision; that the right front of plaintiff's and the left rear of defendants' truck came into collision with great force and violence resulting in the damage to plaintiff's truck.

The charges of negligence to the extent necessary to set them forth here are that the driver of defendants' truck

failed to stop at the stop sign before entering U. S. Highway 20-87; that the said driver failed to keep a proper lookout for traffic on U. S. Highway 20-87; that he failed to accord to plaintiff's truck the right of way; that he failed to heed the warning signal given by plaintiff's driver; that suddenly and without warning he pulled onto the north side of the highway at a time and in such manner that a collision was unavoidable.

For answer to the petition the defendants first filed a general denial, then alleged specially that the collision came about because of the negligence and contributory negligence of plaintiff's driver in the following particulars: That he was operating the truck at a high, dangerous and unreasonable rate of speed; that the truck was out of control; that he attempted to pass at a time and under circumstances when passing was dangerous. Further answering they pleaded the applicability of the laws of Wyoming with regard to negligence and asserted that contributory negligence on the part of plaintiff's driver was a bar to recovery.

At the conclusion of plaintiff's evidence the defendants moved for a directed verdict which was overruled.

At the conclusion of all of the evidence the cause was submitted to a jury under instructions outlining the theory contained in the petition and in part the theory of the answer. The jury returned a verdict in favor of plaintiff in the amount of $4,250. Judgment was entered on the verdict. Motion for new trial was filed and overruled. From this judgment and the order overruling the motion for new trial the defendants have appealed.

The defendants predicate their first ground for reversal on the ground that the court should have directed a verdict in favor of defendants, it being their contention first, that negligence was not proven and second, that plaintiff's driver was guilty of contributory negligence sufficient as a matter of law to defeat a recovery.

The evidence of plaintiff is that at a point about 750 feet west of the side road plaintiff's truck was traveling from 30 to 35 miles per hour; that the driver slackened the speed

of the truck so that when he was about 50 feet west of the intersection it had been reduced to about 25 to 30 miles per hour; that just before the collision the speed was from 15 to 20 miles per hour; that when plaintiff's driver was about 50 feet back from the intersection defendants' truck came into the intersection without stopping and turned east onto and proceeded eastward on the right or south side of U. S. Highway 20-87; that at about this point plaintiff's driver sounded his horn and pulled over north beyond the center of the highway and kept riding his brakes and reducing the speed of his truck; that between 50 and 75 feet east of the intersection defendants' truck lurched over in front of plaintiff's truck so suddenly that plaintiff's driver was unable to avoid a collision. After the collision the trucks traveled 300 to 350 feet eastward and turned over. There were tire marks on the highway in the vicinity of the collision. These marks were north of the center.

On these facts in the light of the allegations of the petition it cannot be said that the trial court erred in refusing to direct a verdict in favor of the defendants. The question of whether or not defendants' driver was negligent under the circumstances is one upon which different minds might fairly arrive at different conclusions. This being true a jury question was presented.

"The issue of negligence or contributory negligence is ordinarily one to be determined by the jury. * * * That is true even in a case where the testimony, as in the case at bar, is undisputed, if different minds may fairly arrive at different conclusions, and where the inferences from the facts are not so certain that all reasonable men, in the exercise of fair and impartial judgment, must agree upon them." *Loney v. Laramie Auto Co.*, 36 Wyo. 339, 255 Pac. 350.

Defendants assert that the evidence discloses that plaintiff's driver was guilty of contributory negligence as a matter of law, that is, contributory negligence was shown without dispute and so conclusively that different minds could not fairly arrive at a different conclusion and that opposite

inferences by reasonable men in the exercise of fair and impartial judgment could not be drawn. The witnesses for defendants do not concede that defendants' driver came out from the side road without stopping. Their testimony was to the contrary. They do not concede that defendants' truck was on the north side of the highway at the time of the collision. While there is not too much certainty in their testimony in this regard yet it is a sufficient denial to prevent a trial court or this court from saying that plaintiff's evidence must be taken as true and that no opposing inference may reasonably be drawn from the entire evidence.

Contrary to the determination made in the former opinion, we now conclude that plaintiff was not entitled to a directed verdict. To hold that he was so entitled would be to say that the negligence of defendants was proven without refutation and also that the allegations of contributory negligence were without support in the evidence.

It was contended substantially in the former opinion that the evidence of tire marks irrefutably fixes the point of collision as that claimed by plaintiff. The theory of the contention is that these are physical facts which point to a single conclusion or inference. With this contention and this theory we cannot agree.

Instead of uncontroverted facts they are circumstantial evidence to be weighed and considered by the jury along with the other evidence in the case. *Jones v. Union P. R. Co.*, 141 Neb. 112, 2 N. W. 2d 624.

As to the question of contributory negligence the court instructed the jury that if they found that plaintiff's driver was guilty of contributory negligence plaintiff could not recover. This was a proper instruction under the laws of Wyoming.

With this in mind and the rule laid down in *Loney v. Laramie Auto Co., supra,* we conclude that the court did not err in the submission of the question of plaintiff's contributory negligence to the jury.

The next assignment of error is that the court erred in giving the following portions of instruction No. 7:
*affirmed.*

"The Statutes applicable in this case are, in substance, as follows:

"No person shall operate a motor vehicle on any highway outside of a city or village at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person.

"All motor vehicles entering * * * state highways on which stop signs are erected shall come to a full stop as near the right-of-way line as possible before entering onto such state highway, and, regardless of direction shall give the right-of-way to vehicles upon said highway."

The two paragraphs following the introduction state Nebraska statutory rules. The first of the two obviously has application to the plaintiff since the speed of defendants' truck under the evidence is not a matter of controversy. The second has application to the defendants.

The matters contemplated by these portions of instruction No. 7 were put in issue by the pleadings and evidence was offered and received thereon. The Wyoming statute dealing with these subjects, if any that state has, was neither offered nor received in evidence. The rule in such circumstances, as stated in the syllabus of *National Fidelity Life Ins. Co. v. Gordon,* 130 Neb. 130, 264 N. W. 155, is as follows: "In the absence of proof to the contrary, the laws of a sister state will be presumed to be the same as the laws of Nebraska." See, also, *Stark v. Olsen,* 44 Neb. 646, 63 N. W. 37; *Franks v. Horrigan,* 120 Neb. 1, 231 N. W. 27.

The court therefore did not err in the giving of the questioned portions of instruction No. 7.

The third assignment of error is directed to the refusal of the court to include in instruction No. 2 negligence on the part of plaintiff's driver "In operating the said tractor-trailer on a highway with improper braking equipment."

The fourth is the refusal to admit in evidence chapter 72, section 282, paragraph 4, sub-section B1, of the 1940 Wyoming Supplement pertaining to motor vehicles or combination of vehicles.

The fifth is the refusal to permit a witness to give testimony as to what the driver of plaintiff's truck said about the condition of his brakes after the accident.

E. L. Collier interviewed plaintiff's driver, Nestor L. Callahan, after he had been taken to a hospital in Douglas, Wyoming. His testimony was taken by deposition and offered and parts of it read in evidence at the trial. Plaintiff as part of his case read in evidence certain parts of the deposition. At the time and before defendants had adduced any evidence on their behalf defendants read the following questions and answer: "Q—Did you interrogate Mr. Callahan concerning the condition of his brakes when you saw him at the Douglas Hospital?" "A—Yes, sir, I asked him about his brakes." "Q—What did he say about them, if anything?" The latter question was objected to on the ground that it was hearsay, not binding on the plaintiff and called for a conclusion of the witness and the party interrogated, and that no foundation had been laid for impeachment. The objection was sustained. The answer to the question as follows was offered and objection to the offer sustained: "A—As I recall, he made the statement at the time that he was unable to stop his vehicle and stated that apparently his truck or tractor seemed to have mechanical brakes and the brakes on the semi were air controlled or hydraulic controlled and that something was wrong with the condition of the brakes at the time of the accident and he didn't exactly state what it was, but it seemed that the brakes on the semi were holding better than the brakes on the tractor unit."

This statement was offered in support of the allegation that the brakes on plaintiff's truck were faulty. It contains nothing more than an opinion or conclusion that the brakes were faulty and for that reason the objection to the offer was properly sustained.

There was no evidence offered or adduced tending to show that the brakes on plaintiff's truck were defective other than that offered from the deposition of Collier and this was properly rejected. It follows then that assignments

Nos. 3 and 4 must fall. As to No. 3 it was not error to fail to submit an issue of negligence based on defective brakes without evidence to support the issue. As to No. 4 it was not error to sustain an objection to an offer of the statutes of Wyoming providing braking standards in the absence of evidence or an offer showing a violation of such requirements.

Finding no reversible error the judgment of the district court is affirmed.

AFFIRMED.

SIMMONS, C. J., concurring in part and dissenting in part.

I concur in the judgment of affirmance. I dissent to that portion of the opinion setting aside the opinion previously adopted in this case. Reference here is made to the earlier opinion for a more detailed recital of the evidence than that contained in the majority opinion.

The majority state that the statement of the case is correct, but disagree with its. conclusions. Two conclusions are set out with which the majority take issue. The majority conclude that there was evidence to go to the jury here as to the questions of plaintiff's contributory negligence and defendants' negligence.

The majority recite the evidence in conflict upon which I assume they base their finding of a dispute on these questions. The first one is that defendants' witnesses do not concede that defendants' driver entered the highway from the side road without stopping. I agree that there is a conflict in the evidence—but it goes to a matter that proves neither negligence nor contributory negligence. Both parties agree that when defendants' truck entered the highway, it did so on its own side of the road and proceeded east on that side of the road. The negligence proved was that about 75 feet east of the intersection, defendants' truck suddenly lurched over to the left and in front of the plaintiff's vehicle. That evidence is not denied by defendants' witnesses. It stands unchallenged as a fact. Neither is it challenged that when the lurch occurred, it was then impossible for plaintiff's driver to avoid a collision. That

negligence of the defendant was, in the language of the majority, "proven without refutation." Certainly there is nothing in the evidence that the defendants' driver did or did not stop when entering the highway which goes to show contributory negligence on the part of the plaintiff.

The next and apparently only other conclusion in the former opinion with which the majority disagree is that which goes to the location of the defendants' truck at the point of the collision, i e., is there a dispute in the evidence sufficient to go to the jury as to whether or not it was on the north side of the highway? They admit that there is not "too much certainty" in defendants' testimony, but yet hold there is a sufficient denial. They do not set out the evidence. They say it was contended in the former opinion that the evidence of tire marks irrefutably fixes the point of collision, and that the theory was that these tire marks are physical facts which point to a single conclusion or inference. What was said in the former opinion was: "All the testimony is that the plaintiff's truck was on the north side of the highway well beyond the center line; that it was there before, at and after the impact is conclusively shown by the pictures of the skid marks and the testimony of the witnesses. There is no evidence to the contrary. Plaintiff's unit would not and could not have hit the defendants' truck had it not been on the left or north half of the highway also. Defendant, Milton J. Olson, admitted that the skid marks of his truck first appeared on the north half of the highway, but seemed to have had the theory 'at the time' that somehow the impact of the tractor against his truck picked it up and set it over and down on the north side of the highway. Just how that could happen in the face of the undisputed testimony that plaintiff's tractor was then well to the north of the center is not explained."

The conclusion in the former opinion rests upon the evidence as to the skid marks *and* the testimony of the witnesses.

Now, what is the evidence as to the skid marks on the pavement? It is set out in the former opinion as follows:

"The under-sheriff and the highway patrolman came to the scene at separate times thereafter. They are not contradicted on their evidence as to what was visible. There were dark, heavy skid marks all well over on the north half of the pavement, beginning about 15 to 25 feet west of the point of impact, as they determined it, and continuing to where the trailer turned over and the tractor left the pavement. There were lighter marks beginning at the point of impact and continuing down the pavement to where defendants' truck left the pavement. They located the point of impact from the skid marks and glass. It was 75 feet east of the intersection, and on the north half of the highway. The patrolman made exact measurements. The oiled surface at the point of impact was 21 feet, 9 inches wide. As shown by the skid marks, the right wheels of the defendants' truck were 8 feet, 7 inches from the edge of the pavement on the south side, and 12 feet, 3 inches from the north edge of the oiled surface, and the left wheels were 7 feet, 2 inches from the edge on the north side." The majority do not disagree with that statement. It is fully sustained by pictures in evidence taken both by plaintiff's and defendants' witnesses. These pictures cannot argue, surmise, evade, or lie. They are not challenged.

Now, what is the defendants' evidence which the majority state constitutes a denial with "not too much certainty?" First, there is the testimony of Johnson, who was a passenger in defendants' truck. He neither saw nor heard anything. He testified that they turned onto the highway and went about 100 feet when "our truck went up in the air," came down and started to skid. So he puts the collision at the point where they started to skid—and the pictures and the undisputed evidence of the skid marks show that that was well over on the north half of the highway. His own counsel did not ask him what position they were in "at the point of the collision" but rather "what position in the highway you were in." This relates, if it relates to anything, to a previous "as you were going down the highway" question. He answered: "Well, we was on our side of the

road, I am sure." On cross-examination he was asked: "And you are not sure either that this accident happened on the south side of the road, are you?" He answered: "Not positive." He then was asked about an affidavit he had given, and in answer to whether or not he had given it he volunteered the answer: "We was on our side of the road." He was not then being asked as to where he was when the collision occurred. He then admitted that he had given an affidavit that "I don't know what side of the road we were on although I think we were on our side." So I submit that fairly construed, this witness was testifying as to where they were "as you were going down the highway." He did not deny and was not asked to deny the sudden lurch to the left into the path of plaintiff's transport.

Engstrom was the driver of defendants' truck. He was asked his position "at the time you were hit." His answer was that he was down the highway 75 to 100 feet. He later was asked: "Where were you on the highway?" He answered: "I believe I was on my side." It was not a statement of fact but a statement of present opinion. On cross-examination he was asked: "You said you believe you were on your side. What makes you believe that?" He then said that there was a hole just before the place where he turned into the highway; that he pulled around that and he did not think it made him go "past the center." So he clearly was testifying that he was on his own side of the highway when he went onto it—75 feet before the accident. No one disputes that. He later was shown a "little drawing" and was asked if that was substantially the position of the vehicles "when the accident occurred." He studied the drawing and said: "Yes, I believe so." He identified the truck, numbered 1 on the chart, as his truck. He marked an "x" as the center of the highway. He admitted that the diagram showed that his truck was over the center. He was asked if that was right and his final answer in all this was: "I couldn't say if it was." But he did not say that it was not. He did not deny and was not asked to deny the sudden lurch to the left and into the path of plaintiff's transport.

Next, one of the defendants Olson testified. He was at the scene of the accident shortly after it happened. He observed the skid marks and he took pictures. He was there with the highway patrolman. He was asked if he was able to determine where the impact of the vehicles occurred. His answer was: "Well, *at the time* I couldn't quite agree with him" (the patrolman), as to whether the lighter tracks "were our truck, those marks, or not." He did not say that the marks were not on the north side of the pavement. He just did not agree "at the time" that they were the marks of his truck. He did not even say he disagreed at the time of the trial. The evidence shows without dispute that those marks went from that point right to his truck. He then was asked if there was anything on the highway to tell where the collision occurred. He said yes, there were definite markings where the skidding first occurred and from there on down the highway was littered with wreckage. He was asked on cross-examination: "Did you determine on what side of the highway the collision occurred?" His answer was: "I would say it wasn't in the middle—*it was practically*—it was on the right side of the highway, *mostly* on the right side of the highway." He then was asked if it was not plain that the skid marks made by his truck were north of the center. He answered: "From the angle of the skid marks it was a little to the left of the highway—or the center line of the highway, * * * ." He then volunteered the statement that the reason for his disagreement with the patrolman was that "at the time" he couldn't establish whether the "truck was picked up and then set down at that point and the marks start from there." He further said that there were "no visible markings we could see at the time as to just what the route was *before* the impact." He did not deny that the route from the point of impact was on the north side of the highway. He probably referred to the route of his truck. But there were visible markings which he testified to and clearly showing in the pictures as to the route before the impact of plaintiff's truck, and they are all

shown in the pictures and are far to the north of the center of the highway. No one denies the location of those marks and that they were made by plaintiff's truck. He then said that "The point of impact showed a darker line, but not what you would call a definite skid mark" but a mark made by the tires of his truck. Those marks, without dispute, are shown by the pictures and other evidence to have been on the north side of the highway. So the defendant himself on direct and cross-examination puts his truck on the north side of the highway at "the point of impact."

The conclusion of the majority is that this evidence is sufficient to raise a jury question. as to whether or not the collision occurred on the north half of the highway. I submit that the location of the point of impact as north of the center line was "proven without refutation."

It was not held in the former opinion that the tire marks alone were conclusive as to the point of the impact, but it was held that these tire marks, plus the evidence of the plaintiff, plus the admissions of the defendants' witnesses, denied only by evasive "I think", "I am not positive" and "I believe" answers, removed that question from the category of an issue to be determined by a jury.

The majority then say that the tire marks are not "uncontroverted facts" but circumstantial evidence to go to the jury. I submit they are uncontroverted evidence of the facts. Apparently the majority mean to say that they are not physical facts. The authorities are to the contrary. The position of tire marks and skid marks has been recognized as important physical facts within the rule that courts will not allow verdicts to stand when they rest upon evidence which is contrary to physical facts and human experience. 10 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), sec. 6554, p. 237. Skid marks are treated. as physical facts in *Jones v. Union P. R. Co.*, 141 Neb. 112, 2 N. W. 2d 624, cited by the majority. This court has said: " * * * where the statements of the witnesses are opposed to natural laws and conclusive inferences arising from the undisputed physical facts, there is no question

of weight of evidence, and the latter must prevail." *Varnum v. Union P. R. Co.,* 112 Neb. 340, 199 N. W. 503.

In *Hahn v. Doyle,* 136 Neb. 469, 286 N. W. 389, this court approved an instruction to a jury which stated that the physical facts surrounding an accident were very important, and, if the jury found that the verbal testimony of any witness or witnesses was in conflict with the physical facts and could not be reconciled therewith, the physical facts should be accepted as reflecting the truth.

Even accepting the majority's contention that there was a controversy in the parol evidence, I submit that the evidence of the tire marks controls. That plaintiff's vehicle was on the north side of the highway before, at and after the impact is established by the uncontroverted evidence of the witnesses and the unchallenged evidence of the skid marks as shown by the pictures taken by both the parties. No witness undertook to say that those marks were not made by plaintiff's truck. In *Jones v. Union P. R. Co., supra,* we said: " * * * if but one inference may be arrived at in the minds of reasonable men from an examination of the physical facts, then that inference must be accepted, but if with equal force and propriety an opposite inference or inferences may be drawn the question becomes one for the jury."

We need not argue here from the premise of a general rule. The Supreme Court of Connecticut has directly considered this question and stated an applicable rule. In *Willows v. Snyder,* 116 Conn. 213, 164 Atl. 385, that court had before it the effect to be given to evidence of tire marks. It tested them by this rule: "Marks such as those of which evidence was given in this case can become conclusively determinative between conflicting oral testimony as to the circumstances of an accident only when their existence and location are admitted or undisputed." That court has treated tire marks as physical facts. See *Flynn v. Peracchio,* 118 Conn. 124, 170 Atl. 926, where the rule in the *Willows* case was referred to as one under which "indisputable physical facts" can be established.

I submit that the existence and the location of these tire

marks is both admitted and undisputed, and that, standing alone, they are conclusively determinative and, as the Connecticut court said, are indisputable physical facts. See, also, *Missouri P. R. Co. v. Moore*, 199 Ark. 1035, 138 S. W. 2d 384, where skid marks made before an accident as some were here, were held to control over the parol testimony of a party contrary thereto. The court there held the parol testimony could not be accepted as substantial evidence in the face of the physical facts—one of which was a skid mark.

The majority seem to hold that under this evidence a jury of reasonable men could properly hold the fact to be that plaintiff's vehicle without leaving its course on the north side of the highway, reached out to the south side, collided with and picked up defendants' truck, carried it back to the north half of the highway, set it down and proceeded on its way. May it be said with "equal force and propriety" that such an inference can be drawn from this evidence? I do not agree.