RICHARD E. FINNERN, APPELLEE, V. HARRY E. BRUNER, JR.,
ET AL., APPELLANTS, IMPLEADED WITH ARTHUR N. BRUNER
ET AL., APPELLEES.

92 N. W. 2d 785

Filed November 7, 1958. No. 34378.

_Frost, Meyers & Farnham, James E. Fellows,_ and _Viren, Emmert, Hilmes & Gunderson,_ for appellants.

_Frederick B. Laux_ and _Thede S. Backstrom,_ for appellee Finnern.

*Francis R. Pane,* for appellees Bruner.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAP-PELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Richard E. Finnern, brought this action against defendants, Harry E. Bruner, Jr., and others, seeking to quiet title to Lot 25, Block 2, Ak-Sar-Ben Hill Addition, known as 5211 North Thirty-eighth Street in Omaha, Douglas County, Nebraska. Plaintiff was record title owner of the property as of December 28, 1956, and the primary purpose of his action was to have title thereto quieted with reference to the lien of a judgment for child support rendered in a divorce action in Douglas County on March 7, 1922, in favor of Bessie Mae Bruner and against Harry E. Bruner, Sr., a previous record title owner of said property. Generally speaking, the alleged grounds for relief sought by plaintiff were the statute of limitations, laches, equitable estoppel, and that the judgment had been fully satisfied and paid to Bessie Mae Bruner during her lifetime.

All children of the parties in said divorce action, and their respective spouses, were made defendants. With one exception, they filed answers and cross-petitions denying generally and alleging that a substantial amount of the support judgment and interest thereon was unpaid and a lien on the property involved since June 15, 1942. They prayed for enforcement of the lien, sale of the property, and application of the proceeds thereof in satisfaction of the lien. Plaintiff's reply and answer thereto were a general denial.

Also, with consent of plaintiff, a son, Harry E. Bruner, Jr., as the duly appointed administrator de bonis non of the estate of Bessie Mae Blake, formerly Bessie Mae Bruner, deceased, filed a petition in intervention. Therein he set forth the substance of an absolute divorce decree admittedly rendered in favor of Bessie Mae

Bruner and against Harry E. Bruner, Sr., on March 7, 1922, which required him to then and thereafter pay Bessie Mae Bruner $14 each week for the support of their minor children until their daughter, Catherine Bruner, now Catherine Bergman, attained the age of 16 years, which occurred September 15, 1935. He alleged that on June 6, 1942, the property here involved was conveyed to Harry E. Bruner, Sr., by deed duly recorded June 15, 1942; that Harry E. Bruner, Sr., had failed and refused to satisfy the child support judgment except the sum of $100, as shown by the records of the clerk of the district court; and that there was due and owing on the judgment a sum approximately in excess of $10,000. He also alleged that such unpaid judgment became a lien on the property involved when acquired by Harry E. Bruner, Sr., and prayed for dismissal of plaintiff's petition, enforcement of said lien, sale of the property, and application of the proceeds thereof in satisfaction of the lien. Plaintiff's answer thereto was a general denial.

After hearing upon the merits, the trial court rendered a decree finding and adjudging the issues generally in favor of plaintiff, and that the child support judgment in favor of Bessie Mae Bruner "was fully paid." The judgment dismissed the aforesaid cross-petitions and the petition in intervention, and quieted title to the property in plaintiff as prayed. Thereafter the motion of said defendants and intervener for new trial was overruled, and they appealed, assigning in effect that the judgment was not supported by the evidence but was contrary thereto and contrary to law. We sustain the assignment.

It is elementary that appeals in equity cases are tried de novo by this court, subject to established rules applicable thereto, and as decided in Fischer v. Wilhelm, 140 Neb. 448, 300 N. W. 350, and reaffirmed in Ballmer v. Smith, 158 Neb. 495, 63 N. W. 2d 862, a judgment of an equity court, where the court is trier of the facts,

unsupported by any competent evidence but based solely on speculative or conjectural evidence, cannot stand and requires reversal by this court.

Section 30-803, R. R. S. 1943, provides in part: "Nothing herein shall be construed to prevent an executor or administrator, when he shall think it necessary, from commencing and prosecuting any action against any other person, * * * for the recovery of any debt or claim to final judgment, or from having execution on any judgment." See, also, Mead Co. v. Doerfler, 146 Neb. 21, 18 N. W. 2d 524, 158 A. L. R. 724; Uptegrove v. Metropolitan Life Ins. Co., 145 Neb. 51, 15 N. W. 2d 220; Minahan v. Waldo, 161 Neb. 78, 71 N. W. 2d 723. In the light thereof, we conclude that intervener had a right to prosecute the action as the representative of the estate of Bessie Mae Blake, deceased, to recover any unsatisfied or unpaid portion of her judgment for child support with interest thereon, as provided by law, and to enforce the lien of such judgment.

In Nowka v. Nowka, 157 Neb. 57, 58 N. W. 2d 600, we held that: "A decree awarding alimony and child support in an action for divorce does not become dormant by lapse of time and the defense of the statute of limitations is not available to defeat recovery of delinquent payments."

Also, in In re Application of Miller, 139 Neb. 242, 297 N. W. 91, we held that: "A decree for child support, rendered in a suit for a divorce, does not become dormant because of the failure to issue execution thereon for more than five years."

In that connection, we reaffirmed in Miller v. Miller, 153 Neb. 890, 46 N. W. 2d 618, that: "A decree for child support in a divorce action is not a judgment within the meaning of sections 25-1420 and 25-1515, R. R. S. 1943."

In that opinion we said, citing applicable authorities: "In applying the doctrine of laches the true inquiry

should be whether the adverse party has been prejudiced by the delay. * * *

"Laches does not, like limitation, grow out of the mere passage of time; but it is founded upon the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relation of the parties. * * *

"The defense of laches prevails only when it has become inequitable to enforce the claimant's right, and is not available to one who has caused or contributed to the cause of delay or to one who has had it within his power to terminate the action."

For a discussion of equitable estoppel, which will not be elaborated upon here, see Scottsbluff Nat. Bank v. Blue J Feeds, Inc., 156 Neb. 65, 54 N. W. 2d 392.

In Sullivan v. Sullivan, 141 Neb. 779, 4 N. W. 2d 919, this court held that: "In a decree granting a wife a divorce and the custody of minor children, monthly instalments of alimony and support become vested as they accrue, and unpaid, past-due portions thereof are final judgments beyond the power of the court to reduce by modification of the original decree."

That proposition was reaffirmed in Schrader v. Schrader, 148 Neb. 162, 26 N. W. 2d 617, wherein we held that: "Where a divorce decree provides for the payment of stipulated sums monthly for the support of a minor child or children, contingent only upon a subsequent order of the court, marriage, or the reaching of majority, such payments become vested in the payee as they accrue. The courts of this state are without authority to reduce the amounts of such accrued payments."

In that connection, it has long since been established that such a judgment is for a definite amount and is a lien on the real estate owned by the husband in the county where the judgment was rendered or in which a transcript thereof has been filed, and unless affected by some jurisdictional infirmity the judgment cannot be

attacked collaterally by one who ignored the lien and purchased the husband's real estate, then seeks to defeat the lien of the judgment on the ground that it is not a final judgment. See, Howerter v. Olson, 145 Neb. 507, 17 N. W. 2d 483; Harrington v. Grieser, 154 Neb. 685, 48 N. W. 2d 753. However, in a case such as that at bar, he may establish by competent evidence, as distinguished from evidence which is speculative or conjectural, that such a judgment has been satisfied or paid.

In the light of such rules, we have examined the record, which discloses substantially the following: It was admitted that on March 7, 1922, Bessie Mae Bruner was awarded an absolute divorce from Harry E. Bruner by the district court for Douglas County, and that the decree required him to pay her $14 then and thereafter each week for the support of their minor children until their daughter, Catherine Bruner, who was born September 15, 1919, became 16 years of age. That event occurred on September 15, 1935.

Such children of the parties were defendants Bruner; Waunetta M. Corenman, a widow; and Catherine L. Bergman. Sometime after the divorce, Bessie Mae Bruner, their mother, married one William A. Blake, Sr., and to that union was born a son, defendant, William A. Blake, Jr. Harry E. Bruner, Sr., the husband and father, died May 26, 1955, and Bessie Mae Blake, the mother, died testate June 16, 1952. Admittedly, her son Harry E. Bruner, Jr., was duly appointed executor of her estate and duly discharged as such, but was thereafter duly appointed administrator de bonis non thereof.

The last will of Bessie Mae Blake appears in the record, but contrary to plaintiff's contention, it contains no language from which it could be properly found or inferred that the judgment for child support had been satisfied or paid.

It was also admitted that according to the docket records of the clerk of the district court for Douglas

County, Harry E. Bruner, Sr., paid in the sum of $100 on the child support judgment; that no further satisfaction of such judgment had been made on the docket; and that Harry E. Bruner, Sr., was one and the same person as Harry E. Bruner who received a deed to Lot 25, Block 2, Ak-Sar-Ben Hill Addition to Omaha on June 6, 1942, which was duly recorded June 15, 1942. The property will be hereafter called Lot 25, or 5211 North Thirty-eighth Street.

In that connection, it was stipulated between plaintiff, intervener, defendant children, and their surviving spouses, that the chain of title to Lot 25 from February 2, 1939, to January 1, 1957, as shown by the public records, was as follows: On February 2, 1939, a recorded land contract was entered into between Joseph T. McMahon as seller, and Harry E. Bruner as buyer of Lot 25. A quit claim deed to Lot 25 from McMahon to E. R. Van Horn, dated June 22, 1940, was recorded June 15, 1942. A limited warranty deed to Lot 25, dated June 6, 1942, from E. R. Van Horn and Alice Van Horn, husband and wife, to Harry E. Bruner, was recorded June 15, 1942. A warranty deed to Lot 25, dated May 26, 1945, from Harry E. Bruner, Sr., to Eugene C. Lloyd and Jeannette Lloyd, husband and wife, was recorded May 28, 1945. In that connection, Mrs. Lloyd testified as a witness for plaintiff that she took possession of and lived at 5211 North Thirty-eighth Street from July 1945 until July 1947, but no one demanded that she move out. She admitted, however, that she had so received a deed to the property from Harry E. Bruner, Sr., and also an abstract thereto which disclosed the divorce proceedings between Bessie Mae Bruner and Harry E. Bruner, Sr., and that her husband's friend, a lawyer for a company which made a loan on the property, examined the abstract and gave an oral opinion that the title was clear. She asked said lawyer "* * * why this divorce case was in there, and he said it had nothing to do with the title and that the title was clear to his knowledge."

It thus appears that she and her husband not only had constructive notice of the judgment here involved, but also had actual knowledge thereof when they bought Lot 25.

It was also stipulated that a warranty deed to Lot 25 and other property, dated July 15, 1947, from the Lloyds to Leon A. Bethel and Martha G. Bethel, husband and wife, was recorded August 4, 1947. In that connection, Leon A. Bethel, by affidavit offered by plaintiff and admitted without objection, testified that he so purchased the property and that he and his wife occupied same without challenge of ownership until July 9, 1948, when they sold it to Thomas J. Sheehan and Alberta L. Sheehan. It was stipulated that a warranty deed dated July 9, 1948, to said property from the Bethels to the Sheehans, as husband and wife, was recorded July 10, 1948. In that connection, Thomas J. Sheehan, as a witness for plaintiff, testified that he so purchased the property from the Bethels, took possession of same, and lived there about 8½ years until they sold it to plaintiff in December 1956, without anyone having made any claim against it, although defendant George E. Bruner was their next-door neighbor for about 2 years. He admitted, however, that he had obtained an abstract to the property when they purchased it; that he had it examined; and that an opinion was written thereon which they paid for, but Osborne Realty handled the sale and everything, and the opinion was left in their office, so the witness thought everything was all right and he never received a copy of the opinion until a month before this trial.

It was further stipulated that a warranty deed to said property, dated December 28, 1956, from the Sheehans to plaintiff, was recorded January 2, 1957. In that connection, plaintiff simply testified that he so purchased the property "From the Sheehans and Robert Mitchell," but that Sheehans were owners of the property and that he moved into the property in December and no one

had asked him to move out, although this action was filed on February 20, 1957.

In that connection, defendant Catherine L. Bergman testified that she knew her father, Harry E. Bruner, Sr., owned the property at 5211 North Thirty-eighth Street, and that after she was graduated from high school in 1939, she lived there with him until she married a Mr. Judd on October 12, 1940. That marriage resulted in divorce, and immediately thereafter, in July 1947, she and her little 6-year-old girl resided in her mother's home at 4227 North Thirty-sixth Avenue until in July 1948, when she married Carl G. Bergman. She testified that she knew her mother and father were divorced, but that her mother never told her that any judgment had been rendered in her favor for child support, and she had no knowledge thereof until in December 1956 when "Robert Mitchell," a realtor mentioned by Thomas J. Sheehan, asked her to sign some papers concerning a piece of property her father owned. Mitchell said it didn't amount to anything, and was a mere matter of form. She identified exhibits Nos. 4 and 5 as unsigned carbon copies of the original papers presented to her for signature by Mitchell. However, her husband, Carl G. Bergman, intervened, wanting to see the papers before she signed them, so Mitchell took the two originals and two copies thereof, along with the abstract, to her husband's office the next morning. Her husband, as a witness for defendants, verified that testimony and identified exhibits Nos. 4 and 5 as unsigned carbon copies of the unsigned original papers presented to and left with him by Mitchell until they were turned over to counsel for intervener and defendants prior to this trial. The originals were duly returned to Mitchell and never signed. They were offered in evidence by defendants, and although no objection thereto was made, their tender was erroneously refused by the court. They appear in this record, and will be considered here as evidence that plaintiff not only had

timely constructive notice but also actual knowledge, indicating that the child support judgment was an unsatisfied lien on the property when he purchased same.

Exhibit No. 4 was entitled: "In the District Court of Douglas County, Nebraska, Bessie Mae Bruner, Plaintiff, vs. Harry E. Bruner, Defendant, Doc. 190, No. 121, Application." It stated in substance that both of said parties were deceased; that during their lifetime certain orders were entered requiring payments of support and maintenance for their minor children by Harry E. Bruner, Sr., until Catherine Bruner Bergman, applicant, had attained the age of 16 years; and that all payments required by such orders were fully made directly to plaintiff (Bessie Mae Bruner), but through inadvertence and neglect same had not been entered of record in said case. The application provided for the signature of Catherine Bruner Bergman and a positive verification of the facts, and prayed for a finding and determination that full and complete compliance had been had under all orders of court requiring defendant (Harry E. Bruner, Sr.) to pay plaintiff (Bessie Mae Bruner) for all amounts so due and owing.

Exhibit No. 5 was an order in said cause to be signed by the judge, but never was, which by its terms adjudged that all required payments heretofore mentioned under any order of the court in said cause had been fully and completely made and complied with.

In that connection, Harry E. Bruner, Jr., testified as a witness for defendants that he knew his father and mother were divorced, but he was then only about 15 years old and never was aware of any provision in the decree requiring his father to pay child support to his mother until after "Mitchell" had approached his sister, Catherine L. Bergman, in December 1956, as aforesaid, and a named lawyer, who appeared herein as counsel for plaintiff, advised him of the paper, and wanted him to sign.

As heretofore mentioned, in July 1947, after her

divorce from one Judd, Catherine and her little 6-year-old girl took up residence with her mother at 4227 North Thirty-sixth Avenue, and remained there until in July 1948, when she married Carl G. Bergman. She testified that 4227 North Thirty-sixth Avenue was her mother's home, but was in her brother's name. Plaintiff argued that such home was then in the name of and belonged to Harry E. Bruner, Sr., and that Bessie Mae Blake, formerly Bessie Mae Bruner, and her daughter Catherine had the use thereof during the aforesaid period, after which Harry E. Bruner, Sr., deeded same to Harry E. Bruner, Jr., as satisfaction in some manner for the child support judgment. There is no competent evidence which could sustain such contention.

In that connection, a duly recorded warranty deed, dated November 13, 1950, and bearing 55 cents in revenue stamps, from Harry Edgar Bruner, admittedly the same person as Harry E. Bruner, Sr., to Harry Elmer Bruner, admittedly the same person as Harry E. Bruner, Jr., to Lot 24, Marx Subdivision, an addition to Omaha, for a consideration of "One ($1.00) Dollar and other valuable consideration * * * free from encumbrance except subject to the unpaid balance of a $3,500.00 mortgage to the North Side Bank of Omaha," appears in the record. There is no evidence of the value of that property, the balance then due on the mortgage, or the purchase price thereof. Harry E. Bruner, Jr., testified that his father never gave him any money; and that he purchased the property from his father and mother. He was asked by plaintiff's counsel, "Can you identify Lot 24, Marks Subdivision as 4227 North Thirty-sixth Avenue, Omaha?" He answered "No, sir." No competent evidence whatever appears in this record which could support a conclusion that they were one and the same property, as argued by plaintiff, or that the deed was given in satisfaction of the child support judgment.

Catherine L. Bergman testified that shortly after she and her little girl moved into her mother's home at 4227

North Thirty-sixth Avenue, her father, Harry E. Bruner, Sr., who formerly lived in a room downtown or in other property owned by him on Pratt or Patrick Streets, moved into and lived in the upstairs portion of her mother's home, but that the witness, her little girl, and her mother lived and slept downstairs. There was no evidence from which it could be inferred or implied that the mother and father ever lived together as man and wife during such period, or at any other time after the divorce. The witness, just divorced, then had a little 6-year-old girl. Her mother was working and her father was working. Without dispute, he so moved into her mother's house to help support and care for Catherine and her little girl after she was divorced from Judd. After Catherine was married to Carl G. Bergman she moved out to live with her husband, and her father moved out to live in Florence. The witness admitted that during the time she so lived with her mother, her father gave her mother some money at times to buy groceries so they could make ends meet and provide for the witness and her little girl. How much was so given she did not know. Also, Carl G. Bergman testified that while he was courting Catherine at 4227 North Thirty-sixth Avenue, when he called there 20 or 25 times between July 1947 and July 1948, he saw Harry Bruner, Sr., give Mrs. Blake some money, $5 or $10, on a number of occasions, usually on Friday or Saturday. Then the witness would take Mrs. Blake or Catherine or both to the store and buy groceries with the money. However, we find no competent evidence from which it could be determined with any degree of accuracy what the amount so given was, and there was no competent evidence in any event that it was given with intent to apply same upon or satisfy in any manner the mother's judgment for child support.

There is one other matter requiring discussion. A recorded survivorship warranty deed, dated May 3, 1951, to real property, the description of which is long and

unimportant here, but is known as 2574 Fort Street in Omaha, from Harry C. Hurlbut and Hazel L. Hurlbut to "William A. Blake, Jr. and Lois E. Blake (Husband and Wife) and Harry E. Bruner, Sr. (Step Father)" was offered by plaintiff and received in evidence. It bore $9.90 of revenue stamps but the recited consideration was "One dollar and other valuable considerations." A duly recorded survivorship warranty deed, dated April 30, 1953, purportedly for the same property but deficiently described and "subject to any and all encumbrances recorded and unrecorded" from Harry E. Bruner, Sr., a single man, to William A. Blake, Jr., and Lois E. Blake, husband and wife, for a recited consideration of "One Dollar and other valuable consideration" and bearing 55 cents in revenue stamps, was offered by plaintiff and received in evidence, apparently upon the theory that William A. Blake, Jr., being a son of Bessie Mae Blake and William A. Blake, Sr., such deeds somehow evidenced a satisfaction or payment of the child support judgment. As hereinafter observed, there is no merit whatever in that theory.

That is true because the record discloses that defendants also offered, and there was received in evidence, a photostatic copy of said original warranty deed of April 30, 1953, which showed on its face the deficiency of description, and also a photostatic copy of a warranty deed dated August 3, 1954, which was identical in form and substance except that it supplied the deficiency of description previously omitted from the warranty deed executed on April 30, 1953. In that connection, William A. Blake, Jr., testified, and it is not disputed in any manner, that at the time he purchased the property from the Hurlbuts, realtor "Robert Mitchell," heretofore mentioned, told Blake, Jr., that his salary was insufficient to get the loan required without a co-signer of the note and mortgage, so Harry E. Bruner, Sr., signed them as such, but requested as security therefor that his name appear as a grantee in the warranty deed from the Hurlbuts,

which was done. However, Harry E. Bruner, Sr., never paid anything or furnished any other consideration in the transaction, and after loan payments had been made on the property by the Blakes for about 2 years, the name of Harry E. Bruner, Sr., was removed from the note and he was released by the loan company from any liability on the note and mortgage. Thereupon, Harry E. Bruner, Sr., executed the two warranty deeds to the Blakes respectively on April 30, 1953, and August 3, 1954, as theretofore contemplated by the parties.

As heretofore noted, in cases such as that at bar, the statute of limitations was not available to defeat recovery of delinquent payments of the child support judgment. On the other hand, no element of laches appears herein except lapse of time alone, which was not sufficient to satisfy the judgment for child support. Also, contrary to plaintiff's contention, equitable estoppel by omission to speak or otherwise could not have application to defeat recovery of the child support judgment, because there was no false representation, omission, inconsistent conduct, or concealment of facts made by anyone for the purpose of misleading or inducing plaintiff to change his position and purchase the property. Rather, plaintiff and his predecessors had timely notice and knowledge that the judgment for child support was of record as a lien on the property before it was purchased by them, and plaintiff's own lack of diligence and negligence barred any right to rely upon estoppel.

In conclusion, we find no competent evidence that the child support judgment "was fully paid" as found and adjudged by the trial court. That conclusion was based solely on speculative and conjectural evidence, and the judgment cannot stand. The amount of the unpaid portion of such judgment, with interest at 6 percent, may be readily ascertained by a mere computation thereof by the court.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is re-

versed and the cause is remanded with directions to dismiss plaintiff's petition and render judgment in favor of intervener, Harry E. Bruner, Jr., administrator de bonis non of the estate of Bessie Mae Blake, deceased, for the amount of the judgment for child support which remains unpaid, with interest at 6 percent upon unpaid weekly installments thereof as they accrued prior to September 15, 1935, and upon the principal amount thereof remaining unpaid from September 15, 1935, to date, bearing in mind that interest shall not be compounded in any event. Further, the trial court is directed to adjudge that such an amount so found due and unpaid was a lien on Lot 25, Block 2, Ak-Sar-Ben Hill Addition to Omaha, to order said property sold as upon foreclosure of said lien, and to order the proceeds thereof applied in satisfaction of the judgment lien. All costs are taxed to plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.

MESSMORE, J., participating on briefs.