GEORGE FREIS, JR., APPELLANT, V. MARY DEAN HARVEY,
DIRECTOR, NEBRASKA DEPARTMENT OF SOCIAL SERVICES, APPELLEE.

563 N.W.2d 363

Filed May 6, 1997.    No. A-95-1302.

Robert F. Peterson, of Laughlin, Peterson & Lang, for appellant.

Don Stenberg, Attorney General, and Royce N. Harper for appellee.

HANNON, MUES, and INBODY, Judges.

MUES, Judge.

### FACTS

George Freis, Jr., and Sheila Freis were divorced in 1961. At that time, Sheila was given custody of the couple's two children, and George was ordered to pay child support until each child reached the age of 21. George and Sheila's youngest child reached age 21 on January 29, 1982.

From 1980 until 1995, George made no child support payments, and no attempts were made to collect these payments. On March 16, 1995, the Nebraska Department of Social Services (DSS), pursuant to the Income Withholding for Child Support Act (IWCSA), sent George a notice of intent to withhold income for accrued child support payments. George filed a request for a hearing before DSS to contest the income withholding. At the hearing, George argued that the judgment had become dormant and that DSS was therefore barred from attempting to collect the arrearages. Mary Dean Harvey, the DSS director, disagreed and found in favor of DSS. Pursuant to

the Administrative Procedure Act, George appealed to the district court, which found: "It is quite clear that this statute [Neb. Rev. Stat. § 42-371(2) (Cum. Supp. 1996)] only applies to 'liens'. There is no statute of limitations applicable either to the child support order itself or to income withholding." The district court thus affirmed the decision of the DSS director. George now appeals that decision. We affirm.

## STANDARD OF REVIEW

On an appeal under the Administrative Procedure Act, an appellate court reviews the judgment of the district court for errors appearing on the record and will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Inner Harbour Hospitals v. State*, 251 Neb. 793, 559 N.W.2d 487 (1997); *Rainbolt v. State*, 250 Neb. 567, 550 N.W.2d 341 (1996); *Knowlton v. Harvey*, 249 Neb. 693, 545 N.W.2d 434 (1996).

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Estate of Muchemore*, 252 Neb. 119, 560 N.W.2d 477 (1997); *County of Seward v. Andelt*, 251 Neb. 713, 559 N.W.2d 465 (1997); *Van Ackeren v. Nebraska Bd. of Parole*, 251 Neb. 477, 558 N.W.2d 48 (1997); *Snipes v. Sperry Vickers*, 251 Neb. 415, 557 N.W.2d 662 (1997).

## ASSIGNMENT OF ERROR

George's sole assignment of error is that the district court erred in finding that the income withholding procedure under Neb. Rev. Stat. § 43-1701 et seq. (Reissue 1993 & Cum. Supp. 1994) was not barred by the provisions of § 42-371(2).

## ANALYSIS

Section 42-371, addressing, inter alia, child support judgments under Neb. Rev. Stat. §§ 42-347 to 42-379 (Reissue 1993 & Cum. Supp. 1994), provides in pertinent part:

(1) All judgments and orders for payment of money shall be liens, as in other actions, upon real property and any personal property registered with any county office and may be enforced or collected by execution and the means authorized for collection of money judgments. . . .

(2) Child support and spousal support judgments shall cease to be liens on real or registered personal property ten years from the date (a) the youngest child becomes of age or dies or (b) the most recent execution was issued to collect the judgment, whichever is later, and such lien shall not be reinstated.

George's youngest child attained the age of 21 years on January 29, 1982, over 13 years before DSS instituted the income withholding procedure. No attempts to execute were made since 1980, 15 years before DSS initiated the income withholding process. George claims that since the judgment liens ceased under § 42-371(2) on January 29, 1992, the income withholding procedure commenced in 1995 was barred.

Specifically, George contends that by passing this preceding legislation, the Legislature intended to render such judgments no longer enforceable against a debtor and any of his property after the running of the prescribed time period. He further argues that the legislation, by taking away lien enforcement powers from child support judgments, must be construed to render these judgments dormant by passage of the requisite time period. He submits that it was not the Legislature's intent in passing § 42-371(2) "to allow child support judgments to continue *ad infinitum.*" Brief for appellant at 11. Essentially, George argues that based on § 42-371(2), the child support judgment here became dormant or otherwise unenforceable before the income withholding procedure was commenced.

### Is Judgment Dormant?

Section 42-371(2) provides that child support judgments shall only cease to be *liens* on specified property 10 years from the prescribed events. It does not declare that such judgments cease to exist after this passage of time. In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning; where the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged in to ascertain their meaning. *In re Estate of Muchemore, supra*; *Van Ackeren v. Nebraska Bd. of Parole, supra.*

George's argument that a judgment ceases when the lien ceases fails to recognize the fundamental distinction between a

judgment and a judgment lien. A judgment lien is a creature of statutes which in express terms or by necessary implication give judgments such effect; it is purely a creature of statute. 50 C.J.S. *Judgments* § 551 (1997). See, also, *Grosvenor v. Grosvenor*, 206 Neb. 395, 293 N.W.2d 96 (1980) (lien of judgment is creation of statute subject to legislative control and did not exist at common law, citing 49 C.J.S. *Judgments* § 454 (1947)); *Halmes v. Dovey*, 64 Neb. 122, 89 N.W. 631 (1902).

Neb. Rev. Stat. § 25-1504 (Reissue 1995), for example, creates a lien on the lands and tenements of a judgment debtor within the county where the judgment is entered, and Neb. Rev. Stat. § 25-1303 (Reissue 1995) provides that a transcript of a judgment filed in the office of the clerk of the district court and entered on the judgment records shall be a lien on the property of the debtor in that county where filed. On the other hand, a money judgment is not automatically a lien on personal property in this state, and a lien is not acquired until the property is seized in execution. See § 25-1504. See, also, *Credit Bureau of Broken Bow, Inc. v. Moninger*, 204 Neb. 679, 284 N.W.2d 855 (1979); *Ceres Fertilizer, Inc. v. Beekman*, 209 Neb. 447, 308 N.W.2d 347 (1981) (no lien existed by reason of money judgment on funds held by court, as no execution had yet been issued). As seen above, § 42-371(1) declares that child support orders shall be liens "as in other actions, upon real property and any personal property registered with any county office . . . ."

The lien of a judgment is merely an incident of the judgment and may not exist independently of the judgment. 50 C.J.S. *Judgments* § 552 (1997). In other words, it is essential to the creation of a judgment lien that there shall be a judgment and it is essential, that the judgment be final, valid, and subsisting. *Id.*, § 555. Thus, when a judgment becomes dormant it ceases to be a lien until revived. See, e.g., *Lammers Land & Cattle Co. v. Hans*, 213 Neb. 243, 328 N.W.2d 759 (1983) (dormant judgment cannot support creditor's bill); *Glissmann v. Happy Hollow Club*, 132 Neb. 223, 271 N.W. 431 (1937); *Halmes v. Dovey, supra.*

As is clear from the foregoing principles, a valid and subsisting judgment is necessary to the existence of a judgment lien. As an example, Neb. Rev. Stat. § 25-1515 (Reissue 1995) pro-

vides that in cases of judgments generally, if an execution is not sued out within 5 years from the date of any judgment, or if 5 years have intervened between the date of the last execution issued and the time of suing out another writ of execution, the judgment becomes dormant and shall cease to operate as a lien on the estate of the judgment debtor. See, also, Neb. Rev. Stat. § 25-1542 (Reissue 1995). However, it is important to note that under § 25-1515, the judgment lien ceases as a result of the judgment's becoming dormant, not vice versa. The judgment becomes dormant by the express terms of the statute, not because the lien ceases. Under § 25-1515, once a judgment becomes dormant, the lien ceases, and the lien is revived only when the judgment is revived, a procedure addressed in Neb. Rev. Stat. § 25-1420 (Reissue 1995).

In sum, § 42-371(1) *creates* a statutory lien arising from a child support judgment. Section 42-371(2) extinguishes that lien, not the judgment. The language of § 42-371(2) is plain and unambiguous, and no interpretation is necessary to ascertain its meaning. George would have us construe the statute as stating that "[c]hild support . . . judgments [*shall become dormant and*] shall cease to be liens," much the same as § 25-1515 now provides as to other judgments. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. Neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute. *No Frills Supermarket v. Nebraska Liq. Control Comm.*, 246 Neb. 822, 523 N.W.2d 528 (1994) (quoting *Gillam v. Firestone Tire & Rubber Co.*, 241 Neb. 414, 489 N.W.2d 289 (1992)). We agree with the trial court's reasoning that § 42-371(2), by providing that a child support judgment ceases to be a lien on certain property, does not mean that the judgment itself ceases to exist.

Yet, George insists, despite the clear language of § 42-371(2), that the Legislature since 1959 has consistently provided for termination of the lien of child support judgments (after the passage of the requisite time period) and must have intended thereby to bar enforcement of child support judgments. Before 1959, the Nebraska Supreme Court had consistently found that a decree awarding child support in an action for divorce did not

become dormant by lapse of time and that the defense of the statute of limitations was not available to defeat recovery of delinquent payments. See, e.g., *Finnern v. Bruner*, 167 Neb. 281, 92 N.W.2d 785 (1958); *Nowka v. Nowka*, 157 Neb. 57, 58 N.W.2d 600 (1953). In *In re Application of Miller*, 139 Neb. 242, 297 N.W. 91 (1941), relied upon in both *Finnern* and *Nowka*, the Supreme Court specifically found that a decree for child support is not a judgment within the meaning of §§ 25-1420 and 25-1515. Section 25-1515, discussed above, appeared in the same form at the time these decisions were made as it does today, and its provisions render judgments dormant if no execution has been issued within 5 years. As previously stated, § 25-1420 allows for the revivor of a dormant judgment, provided the action to revive is commenced within 10 years after the judgment becomes dormant.

In *Finnern v. Bruner, supra,* a decision filed in November 1958, the Supreme Court applied the nondormancy rule and found that a lien on real estate for child support stemming from a 1922 judgment in a divorce decree continued to be valid nearly four decades later as against a plaintiff who sought to quiet title in the subject real estate. In 1959, the Legislature first adopted a lien cessation statute in Neb. Rev. Stat. § 42-319(3) (Cum. Supp. 1959), the predecessor to § 42-371(2). This statute provided in part:

> A judgment or order for child maintenance shall cease to be a lien upon property ten years from the date on which (a) the child, or the youngest child if there be more than one, for whose benefit such judgment or order was entered, attains the age of twenty-one years, or (b) the most recent execution was issued on such judgment or order, whichever date is the later, and such lien shall not be subject to reinstatement.

George contends that the passage of this statute evidences a legislative intent to render child support judgments unenforceable after 10 years from the described events. Even were we to deem the current version of § 42-371(2), or its predecessor, § 42-319(3), ambiguous and thus in need of interpretation, a look at the sparse legislative history provides no clear-cut indication of such intent.

When the bill which was codified as § 42-319 was introduced, the speaker before the judiciary committee stated:

> The purpose of this bill is to place a limitation upon the lien of alimony judgements and child support judgments. Generally, it provides . . . that a judgment for child support shall cease to be a lien ten years from the date on which the youngest child attains the age of 21 years, or ten years from the date of the most recent execution, whichever is the latest.
>
> It is well known throughout the state that old judgments from alimony and child support have been very embarrassing to the passage of titles. . . . It seems only fair to provide that if no execution has been issued thereon for a ten-year period, the judgment should cease to be a lien. . . . [T]he ordinary judgment becomes dormant within five years from its date or the date of its last execution. This bill grants a more extended period.
>
> The bill will only [a]ffect judgments subsequent to the passage of the law. We thought 25-1515 which deals with judgments, would apply to this type of lien, but the Supreme Court has held that child support is not a judgment within the meaning of this section, so this bill is necessary to cover this type of lien.

Judiciary Committee Hearing, L.B. 358, 69th Sess. 8 (March 16, 1959).

The words of introduction used by the speaker create more questions as to intent than they resolve. Did the legislation intend, as the speaker's declared purpose stated, to merely "place a limitation upon the lien" of alimony and child support judgments? Or did it intend to supersede and modify the Supreme Court's rulings by providing for a 10-year period before dormancy of the judgment (rather than the 5 years provided in § 25-1515), with the judgment's not being "subject to reinstatement" (rather than being subject to revivor for 10 years after dormancy as provided in § 25-1420)? We believe that the speaker's words indicate that the *judgment* itself was not the concern of this legislation, but, rather, the *lien* that the judgment created was. Eliminating the embarrassment that "old judgments" had on the passage of titles seems to be the focus. The

reference by the speaker to Supreme Court rulings naturally brings to mind the then recent *Finnern* decision. In that context, we believe the speaker's comments can be reasonably construed to reflect growing policy concerns resulting from what was considered to be the harshness of the perpetual child support lien rule.

In 1972, § 42-319(3) was recodified as § 42-371(2). The language remained primarily the same. In 1985, the Legislature enacted the IWCSA and in the same bill revised the language of § 42-371(2) to its current form. That current form, set forth earlier in this opinion, still speaks in terms of liens ceasing on specified property and remains silent regarding the dormancy of such judgments. Moreover, § 25-1515, which directly addresses the dormancy of judgments generally, remains the same as it was in 1941 when *In re Application of Miller*, 139 Neb. 242, 297 N.W. 91 (1941), was handed down. Any specific mention of child support judgments is conspicuously absent.

The language of § 42-371(2) and its predecessors is plain and unambiguous. While it clearly changed the *Nowka* rule on the subject of *liens* arising from child support judgments, it in no way altered the rule that child support judgments are not judgments under § 25-1515 and thereby are not rendered dormant. Such judgments are likewise not rendered dormant by § 42-371(2).

*Is Judgment Collectible Through Income Withholding?*

We also understand George to contend that § 42-371(2) takes away the lien enforcement powers from child support judgments. We have some difficulty understanding this argument or distinguishing it from George's contention regarding the judgment's being dormant. However, it seems he is claiming that even if the judgment is not dormant, it was not collectible under the income withholding procedure because that process is nothing more than a garnishment; that a garnishment is a lien enforcement proceeding under Nebraska law; that therefore, income withholding is a lien enforcement proceeding; and that since lien enforcement powers are "taken away" by § 42-371(2), income withholding in this case was improper. Simplified, we believe George is saying that since the child support judgment

lien ceased and cannot be reinstated, any process to collect the judgment, however named, which involves the enforcement of a lien, is barred by § 42-371(2).

Assuming, without deciding, that income withholding is no more than a garnishment of wages, George's argument must fail. First, it is based on the faulty premise that a garnishment of George's wages somehow depends on a judgment lien which has ceased to exist. Granted, a garnishment in aid of execution is a process of binding property of a judgment debtor in the hands of a third person to the extent of the judgment creditor's valid judgment. See, e.g., Neb. Rev. Stat. § 25-1056 (Cum. Supp. 1994). In some cases, the right created by the garnishment is even described as a lien of sorts. See, e.g., § 25-1056 (providing for continuing lien on earnings of judgment debtor); *Benedict v. T. L. V. Land & Cattle Co.*, 66 Neb. 236, 92 N.W. 210 (1902) (plaintiff does not acquire clear and full lien but only lien as gives him right to hold garnishee liable for property or value); 38 C.J.S. *Garnishment* § 199 (1996) (right acquired is material aid in collection of debt and is frequently described as lien or equitable lien or quasi-lien). Thus, while the process might be said to create a lien, it is not the enforcement of a judgment lien but only an aid in the collection of a valid judgment. Therefore, the income withholding procedure or, in George's words, the garnishment of wages, while dependent on a valid and subsisting judgment, did not involve the enforcement or reinstatement of the judgment liens which had admittedly ceased to exist at that time.

Second, the judgment lien that had ceased by operation of § 42-371(2) had ceased only as to George's "real or registered personal property" and not as to his wages. Pursuant to a 1985 amendment to § 42-371, a child support judgment was no longer a lien "upon property," but only on the described types of property, and the lien ceased under § 42-371(2) only as to that specific property. Wages are not included. Thus, to the extent that George's argument implicates the notion that § 42-371(2) forever released his wages from garnishment, it is meritless from the clear language of the statute.

To further explain, wages certainly are not real property. The term "registered personal property," while undefined in the

1985 amendment to § 42-371, is clarified by subsection (7), which provides that "[a]ny lien authorized by this section against personal property registered with any county consisting of a motor vehicle or mobile home shall attach upon notation of the lien against the motor vehicle or mobile home certificate of title . . . ." Without dwelling on the potential problems created by subsection (1) first declaring that a child support judgment *is* a lien on registered personal property and by subsection (7) then requiring an additional procedure before the lien "attaches," for our purposes it is sufficient to say that the "registered personal property" referred to in subsections (1) and (2) means property which is registered in a county office. The legislative history supports that interpretation. See Floor Debate, L.B. 7, 89th Leg., 2d Spec. Sess. 880-81 (Nov. 6, 1985). Under no construction can it be said that registered personal property includes wages.

We have determined that § 42-371(2) did not render the child support judgment against George dormant or otherwise invalid by the passage of time. We have also concluded that the cessation of liens against his property as declared by that provision does not bar the income withholding procedures of the IWCSA. Looking to the IWCSA itself, we note that it was adopted in 1985, the same time during which § 42-371(2) was last amended. The stated purpose of the IWCSA is to "encourage the use of all proven techniques for the collection of child . . . support. While income withholding is the preferred technique, other techniques such as liens on property and contempt proceedings should be used when appropriate." § 43-1702. The IWCSA contains minor reference to a statute of limitations on the collection of child support arrearages. It appears in the section of the IWCSA which discusses the law applicable to foreign support orders: "The court shall apply the statute of limitations for maintaining an action on arrearages of support payments of either the local law of this state or of the state which issued the foreign support order, whichever provides the longer period of time." § 43-1742(3). However, the IWCSA contains no such statute of limitations, and we have found no such principle in Nebraska law, either statutory or decisional.

## CONCLUSION

We need not undertake a determination of the intent of the Legislature in passing § 42-371(2) or its predecessors when their terms are plain and clear regarding the issue before us. The language selected, from the inception of this statutory provision in 1959 and continuing to the present, addresses only cessation of the judgment lien and not the dormancy of the judgment itself. That a statutory judgment lien ceases does not destroy the collectibility of the judgment through other recognized processes, so long as the judgment subsists, as it did here. While we may agree that sound policy suggests the appropriateness of a time limitation on the enforceability of such judgments, such is a matter for the Legislature, not this court.

AFFIRMED.