Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/09/2018 08:11 AM CST

State of Nebraska, appellee, v. Scott McColery,
appellee, and Brett McArthur,
Intervenor-appellant.

___ N.W.2d ___

Filed November 9, 2018.    No. S-17-1121.

1. **Statutes: Appeal and Error.** Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below.
2. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.
3. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous.
4. **Statutes.** A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way.
5. ____. It is impermissible to follow a literal reading that engenders absurd consequences where there is an alternative interpretation that reasonably effects a statute's purpose.
6. ____. A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.
7. **Divorce: Alimony: Child Support: Liens: Property: Legislature.** The Legislature did not provide through Neb. Rev. Stat. § 42-371 (Reissue 2016) for a lien on all personal property, tangible and intangible; instead, it expressly limited the lien to "registered personal property."
8. **Judgments: Liens: Statutes.** Judgment liens are creatures of statute.
9. **Liens: Statutes.** When a lien comes into existence by force of a statute, it must be measured by the statute, and can have no greater force than the statute gives it.

10. **Statutes.** Statutes in derogation of common law are to be strictly construed.
11. **Property.** Money is intangible property; it is not tied up in a fixed state.
12. **Bailment: Divorce: Alimony: Child Support: Property.** Under the current statutory scheme for bail, Neb. Rev. Stat. §§ 29-901 through 29-910 (Reissue 2016), money deposited as recognizance with the clerk of the court is not personal property registered with a county office under Neb. Rev. Stat. § 42-371 (Reissue 2016).
13. **Statutes.** With respect to questions about a statute, a court's role is limited to interpretation and application of statutes, irrespective of the court's personal agreement or disagreement with a particular legislative enactment, so long as a questioned statute does not violate a constitutional requirement.
14. ____. Whether a court considers particular legislation as wise or unwise is irrelevant to the judicial task of construing or applying a statute.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Reversed and remanded with directions.

Brett McArthur, pro se.

Joe Kelly, Lancaster County Attorney, and Braden W. Storer for appellee State of Nebraska.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## NATURE OF CASE

This is an appeal by the debtor's former attorney from an order in garnishment enforcing a statutory lien by the State for past-due child support, against an appearance bond deposit held by the clerk of the court in a criminal case unrelated to the child support order. During the pendency of the criminal matter, the debtor had assigned to his attorney his contingent right to a return of the bond deposit, as part of the debtor's payment for the attorney's services. During the garnishment proceedings, the attorney asserted that appearance bond funds are not personal property "registered" with a "county

office," as required for a lien under Neb. Rev. Stat. § 42-371 (Reissue 2016). The district court disagreed and found that the State had a lien under § 42-371. We reverse, and remand with directions.

## BACKGROUND

In 1994, the State obtained a judgment against Scott McColery for child support. By 2000, McColery was approximately $12,000 in arrears on his child support payments. In September 2015, McColery was charged in the county court for Lancaster County with strangulation. By that time, McColery was approximately $18,000 in arrears in his child support payments.

On October 5, 2015, pending trial, McColery deposited with the county court $5,000 in relation to a $50,000 appearance bond. The bond was to remain in force until the final judgment. Ninety percent of the bond deposit was to be returned to McColery upon appearance, and 10 percent would be retained by the county court clerk for bond costs.

Although McColery was originally represented by a public defender, he later obtained Brett McArthur to represent him. As part of McArthur's compensation, McColery assigned the bond funds to McArthur. The assignment was made on October 29, 2015, and was filed with the county court the next day.

Following McColery's conviction, on November 18, 2015, the State filed in the county court an affidavit of lien for child support. The State averred that McColery owed more than $18,000 in past-due child support. The State explained in its affidavit that it had reason to believe that the county court had McColery's property in its possession, in the form of a bond. The parties do not dispute that McColery appeared in court as ordered, and his bond was not forfeited.

### RELEASE OF FUNDS MOTION

On June 30, 2016, McArthur filed a motion with the district court for Lancaster County to issue an order releasing the bond funds to him. The district court overruled the

motion without making specific findings of fact. McArthur appealed.

In *State v. McColery*,[1] we held that we lacked jurisdiction over the appeal, because the court's order overruling the motion to release the bond funds was not final.[2] We explained that the order was not a final determination of the rights of the parties, because it did not indicate that McArthur was not entitled to the funds or that the State was entitled to the funds. We noted that the State had not yet initiated garnishment proceedings. We explained further that if it did so, McArthur would be able to intervene pursuant to Neb. Rev. Stat. § 25-1030.03 (Reissue 2016).

GARNISHMENT PROCEEDINGS

On July 10, 2017, the State filed with the district court an affidavit for garnishee summons after judgment. The State set forth in the affidavit that the district court had McColery's property, which the State sought to garnish to partially satisfy past-due child support in the amount of $17,923.46. The summons and order of garnishment in aid of execution was issued the following day.

The clerk of the district court did not object and responded to the attached interrogatories, stating that it had property belonging to McColery. Specifically, the clerk of the district court described the property as "Bond Money at CR-15-1358," in the amount of $4,500. But, under "[d]ate the money or credits were due, or will be due," the clerk explained "Upon Order - Bond Assigned to Attorney 10-30-15."

McColery requested a hearing and alleged that the funds asked for were exempt from garnishment. McArthur intervened and filed a motion to quash garnishment on the ground that the $4,500 in the district court's possession had been assigned to McArthur before the garnishment action.

---

[1] See *State v. McColery*, 297 Neb. 53, 898 N.W.2d 349 (2017).

[2] See Neb. Rev. Stat. § 25-1902 (Reissue 2016).

The court held a hearing on the motion to quash. The State argued that the child support judgment against McColery operated as an automatic lien against the funds from the moment they were deposited into the county court, because they constituted "personal property registered with [a] county office."[3] McArthur argued that depositing a bond is not "registering" it and, further, that the county court is not a "county office."

The court overruled McArthur's motion to quash and ordered that the bond funds being held by the court be remitted to the Nebraska Child Support Payment Center and credited against McColery's child support arrears. McArthur appeals.

## ASSIGNMENT OF ERROR

McArthur assigns that the district court erred in overruling his motion to quash garnishment and in ordering the payment of funds held by the court toward McColery's child support payments.

## STANDARD OF REVIEW

[1] Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below.[4]

## ANALYSIS

The sole issue raised by McArthur in this appeal is whether appearance bond funds held by the clerk of the court are "personal property registered with any county office," as stated in § 42-371. McArthur argues that the county court is not an "office" and that the deposit of an appearance bond is not "register[ing]" that property with the court. McArthur has not disputed that if the bond funds were personal property "registered" with a "county office," then the statutory lien was automatically perfected upon deposit and garnishment was

---

[3] § 42-371(1).

[4] *In re Interest of Lisa O.*, 248 Neb. 865, 540 N.W.2d 109 (1995).

proper. The clerk of the court did not claim immunity from garnishment proceedings.[5] We limit our opinion to the issues presented.[6] We conclude that money deposited in the court as recognizance is not "registered" personal property under § 42-371.

Section 42-371, contained within the statutory scheme governing divorce, alimony, and child support, establishes a lien on certain property for child support. Specifically, § 42-371 provides:

> (1) All judgments and orders for payment of money shall be liens, as in other actions, upon real property and any personal property registered with any county office and may be enforced or collected by execution and the means authorized for collection of money judgments;
>
> . . . .
>
> (5) Support order judgments shall cease to be liens on real or registered personal property ten years from the date (a) the youngest child becomes of age or dies or (b) the most recent execution was issued to collect the judgment, whichever is later, and such lien shall not be reinstated;
>
> . . . .
>
> (9) Any lien authorized by this section against personal property registered with any county consisting of a motor vehicle or mobile home shall attach upon notation of the lien against the motor vehicle or mobile home certificate of title and shall have its priority established pursuant to the terms of section 60-164 or a subordination document executed under this section.

---

[5] See, Neb. Rev. Stat. § 25-1012.02 (Reissue 2016); *Fox v. Whitbeck*, 286 Neb. 134, 835 N.W.2d 638 (2013); *Anheuser-Busch Brewing Ass'n v. Hier*, 52 Neb. 424, 72 N.W. 588 (1897).

[6] See, *Cattle Nat. Bank & Trust Co. v. Watson*, 293 Neb. 943, 880 N.W.2d 906 (2016); *Myers v. Nebraska Equal Opp. Comm.*, 255 Neb. 156, 582 N.W.2d 362 (1998).

[2-6] The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[7] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous.[8] A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way.[9] Furthermore, it is impermissible to follow a literal reading that engenders absurd consequences where there is an alternative interpretation that reasonably effects the statute's purpose.[10] A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[11] An appellate court can examine an act's legislative history if a statute is ambiguous or requires interpretation.[12]

[7] The Legislature did not provide through § 42-371 for a lien on all personal property, tangible and intangible; instead, it expressly limited the lien to "registered personal property." The terms "registered" and "registered personal property" are not specifically defined in the statutes governing divorce, alimony, and child support. Nor are these terms defined in the various statutes governing execution[13] and other means of enforcement and collection of money judgments.[14] Under dictionary definitions, to "register" is defined variously as to actively and formally enroll or record in a list, catalog, or

---

[7] *State v. Thompson*, 294 Neb. 197, 881 N.W.2d 609 (2016).

[8] *Heiden v. Norris*, 300 Neb. 171, 912 N.W.2d 758 (2018).

[9] *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013).

[10] *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018).

[11] *Id.*

[12] *Farmers Co-op v. State*, 296 Neb. 347, 893 N.W.2d 728 (2017).

[13] Neb. Rev. Stat. §§ 25-1501 through 25-15,105 (Reissue 2016 & Supp. 2017).

[14] See, e.g., Neb. Rev. Stat. §§ 25-1001 through 25-1056 (Reissue 2016).

roll[15]; to enter into a public registry[16]; to record someone's name or ownership of property on an official list[17]; and to enter or record in an official list as being in a particular category, having a particular eligibility or entitlement, or in keeping with a requirement.[18] Inherent to these definitions is both a broad and a narrow understanding of "registration."

The State adopts a broad meaning and argues that appearance bonds are "registered," because the clerk of the court assigns an identification number to the funds and catalogs them into a publicly available court record by the defendant's name, date of birth, and criminal case number. McArthur adopts a narrower meaning and argues that registration under § 42-371 is cataloging property onto a formal registry with a specific purpose that includes registration of liens upon the property. We agree that the Legislature intended a narrower meaning and that an appearance bond deposit is not registered personal property under § 42-371.

The process by which the clerk of the court keeps track of appearance bonds is not specifically required by the bail statutes.[19] Instead, those statutes refer only to the "deposit" of the recognizance.[20] To "deposit" is "[t]he act of giving money or other property to another who promises to preserve it or to use it and return it in kind."[21] To preserve the money in a way that it can be returned, the clerk of the court must necessarily conduct some recordkeeping. Such acts of recordkeeping,

---

[15] See, Black's Law Dictionary 1473 (10th ed. 2014); "Register," Merriam-Webster.com, https://www. merriam-webster.com/dictionary/register (last visited Oct. 26, 2018).

[16] See Black's Law Dictionary, *supra* note 15 at 1473.

[17] "Register," https://dictionary.cambridge.org/us/dictionary/english/register (last visited Oct. 26, 2018).

[18] The New Oxford American Dictionary 1434 (2001).

[19] See Neb. Rev. Stat. §§ 29-901 through 29-910 (Reissue 2016).

[20] See §§ 29-901(1)(c)(i) and 29-904.

[21] Black's Law Dictionary, *supra* note 15 at 533.

however, do not make the money "registered personal property" subject to the statutory lien.

[8-11] Judgment liens are creatures of statute.[22] When a lien comes into existence by force of a statute, it must be measured by the statute, and can have no greater force than the statute gives it.[23] And statutes in derogation of common law are to be strictly construed.[24] Early execution procedures did not extend to intangible assets.[25] Money is intangible property;[26] it is not tied up in a fixed state.[27] Thus, our execution statutes,[28] to which § 42-371 explicitly refers, describe only "goods and chattels" as personal property subject to execution.[29] Money is neither a good nor a chattel.[30] In fact, "personal property" is susceptible of more than one meaning; while personal property has a broader meaning of everything that is the subject of ownership except lands and interests in lands,[31] it was traditionally understood in the more restricted sense embracing only tangible goods and chattels.[32]

It would be unusual to conclude that the Legislature intended § 42-371 to create a lien that could not be executed

---

[22] See, *Grosvenor v. Grosvenor*, 206 Neb. 395, 293 N.W.2d 96 (1980); *Freis v. Harvey*, 5 Neb. App. 679, 563 N.W.2d 363 (1997).

[23] *County Board of Platte County v. Breese*, 171 Neb. 37, 105 N.W.2d 478 (1960).

[24] See *id.*

[25] William J. Woodward, Jr., *New Judgment Liens on Personal Property: Does "Efficient" Mean "Better"?*, 27 Harv. J. on Legis. 1 (1990).

[26] *Weiss v. McFadden*, 353 Ark. 868, 120 S.W.3d 545 (2003).

[27] See *McCulloch v. McCulloch*, 232 Ark. 413, 337 S.W.2d 870 (1960).

[28] See §§ 25-1501 through 25-15,105.

[29] See §§ 25-1503, 25-1504, 25-1516(1), 25-1518, and 25-1521 and 2018 Neb. Laws, L.B. 193, §§ 24 and 26 (effective July 19, 2018).

[30] See, Neb. Rev. Stat. § 45-335 (Supp. 2017); Neb. U.C.C § 2A-103 (Reissue 2001); Black's Law Dictionary, *supra* note 15 at 286 and 808-09.

[31] See *id.*

[32] *In re Estate of Chadwick*, 247 Iowa 1050, 78 N.W.2d 31 (1956).

upon, on an intangible that was not traditionally understood as even being "personal property." And it is clear from the legislative history that the Legislature did not in fact envision a registration system for money, appearance bond or otherwise, when it added the "registered personal property" language to the statute.

The reference to registered personal property was added in 1985 by L.B. 7[33] in response to the federal Child Support Enforcement Amendments of 1984,[34] which required states to, among other things, adopt "'[p]rocedures under which liens are imposed against real and personal property for amounts of overdue support owed by an absent parent who resides or owns property in the State.'" While much of the legislative history concerned other matters, several senators indicated that "registered personal property" was to be understood in a narrower sense. For instance, it was discussed that grain required to be documented with the local courthouse was not "registered personal property" and that Uniform Commercial Code filings would not be considered "registered" for purposes of § 42-371, because they were instead "filed."[35]

In fact, it appears that the only registered personal property specifically contemplated at the time of L.B. 7 were motor vehicles and mobile homes, which are addressed in § 42-371(9). This operates in conjunction with provisions of the Motor Vehicle Registration Act.[36] Section 60-164 of the Motor Vehicle Certificate of Title Act[37] establishes an electronic

---

[33] 1985 Neb. Laws, L.B. 7, § 19.

[34] Pub. L. No. 98-378, § 3, 98 Stat. 1305.

[35] Floor Debate, L.B. 7, 89th Leg., 2d Spec. Sess. 881 (Nov. 12, 1985). See Judiciary Committee Hearing, L.B. 7, 89th Leg., 2d Spec. Sess. 32 (Oct. 24, 1985).

[36] Neb. Rev. Stat. §§ 60-301 through 60-3,222 (Reissue 2010, Cum. Supp. 2016 & Supp. 2017).

[37] Neb. Rev. Stat. §§ 60-101 through 60-197 (Reissue 2010, Cum. Supp. 2016 & Supp. 2017).

title and lien system for various vehicles, to be maintained by the county treasurer and continuously updated. Liens recorded under this system are generally given priority in accordance with the order of time in which they are noted by the county treasurer or Department of Motor Vehicles.[38] This system has little in common with the recordkeeping of the clerk of the court for appearance bond deposits.

Although providing redress for unpaid child support addresses very important public policy concerns, the attachment of a judgment lien to money deposited with the clerk of the court has other public policy implications as well. It is not the role of this court to weigh such public policy matters,[39] and these public policy questions were not weighed by the Legislature when it enacted L.B. 7. Further, we have not been asked to review whether other child support collection remedies are available to reach a child support debtor's appearance bond. Our decision is confined to the application of § 42-371 to the garnishment action here presented.

[12] Several other jurisdictions' statutory schemes that allow child support liens to attach to money, in bank accounts or elsewhere, do so explicitly.[40] Our Legislature could have similarly so provided. But, instead, it limited the lien to "registered personal property." While "registered personal property" may be susceptible to more than one meaning, viewing § 42-371 in pari materia with related statutes and looking at its Legislative history, we must understand "registered" in its narrower sense. We hold that under the current statutory scheme for bail,[41]

---

[38] See § 60-164(3).

[39] See *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006).

[40] See, e.g., Haw. Rev. Stat. § 576D-10.5 (2006); 305 Ill. Comp. Stat. Ann. 5/10-25.5 (LexisNexis 1999); Mass. Gen. Laws Ann., ch. 119A, §§ 6(b)(1) and (5) (West 2017); 23 Pa. Stat. and Cons. Stat. Ann. § 4308.1 (West 2018); Tex. Fam. Code Ann. § 157.317 (West 2014).

[41] See §§ 29-901 through 29-910.

money deposited as recognizance with the clerk of the court is not personal property registered with a county office under § 42-371.

Children's needs call for effective and efficient enforcement of child support obligations. This can easily occur where those seeking the enforcement of child support obligations diligently check bail records against child support judgments, and take prompt action. If a criminal case defendant has posted bond money which is not subject to an assignment or its equivalent to another, a routine garnishment can capture the funds upon release.

[13,14] If the Legislature believes that we have not correctly ascertained its intent, then it is free to amend § 42-371 accordingly. With respect to questions about a statute, our role is limited to interpretation and application of statutes, irrespective of our personal agreement or disagreement with a particular legislative enactment, so long as a questioned statute does not violate a constitutional requirement.[42] Whether a court considers particular legislation as wise or unwise is irrelevant to the judicial task of construing or applying a statute.[43]

## CONCLUSION

Because the bond deposit was not "registered personal property," we reverse the judgment of the district court and remand the cause with directions to vacate the order of garnishment.

Reversed and remanded with directions.

---

[42] *Else v. Else*, 219 Neb. 878, 367 N.W.2d 701 (1985).

[43] *Id.*

Cassel, J., concurring.

I write separately to highlight that other language of the existing statute supports this court's decision. The parties attributed no significance to the statutory phrase "as in other

actions,"[1] but basic principles of statutory construction dictate otherwise. A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[2] The whole and every part of a statute must be considered in fixing the meaning of any of its parts.[3]

The controlling subsection states: "All judgments and orders for payment of money *shall be liens, as in other actions, upon* real property and *any personal property registered with any county office* and may be enforced or collected by execution and the means authorized for collection of money judgments."[4] In answering the question posed by this appeal, the meaning of "as in other actions" is just as significant as any other word or phrase. And this phrase directs attention both to other statutes and to preexisting case law.

Prior to a 1985 amendment made in response to a federal mandate, § 42-371(1) stated, in pertinent part: "All judgments and orders for payment of money under sections 42-347 to 42-379 *shall be liens upon property as in other actions* and may be enforced or collected by execution and the means authorized for collection of money judgments."[5] The Legislature fully comprehended the effect of these words.

The general statute governing the effect of a judgment lien has not changed since long before the 1943 recodification.[6] It was well understood that a judgment became a lien upon a debtor's lands and tenements within the county on the day the judgment was rendered.[7] This flows from the language of the general statute, which states:

---

[1]  Neb. Rev. Stat. § 42-371(1) (Reissue 2016).

[2]  *Heiden v. Norris*, 300 Neb. 171, 912 N.W.2d 758 (2018).

[3]  *Id.*

[4]  § 42-371(1) (emphasis supplied).

[5]  § 42-371(1) (Reissue 1984) (emphasis supplied).

[6]  See Neb. Rev. Stat. § 25-1504 (Reissue 2016).

[7]  See *State Bank v. Carson*, 4 Neb. 498 (1876).

The lands and tenements of the debtor within the county where the judgment is entered, shall be bound for the satisfaction thereof only from the day on which such judgments are rendered. All other lands, as well as goods and chattels of the debtor, shall be bound from the time they shall be seized in execution; *Provided,* that a judgment shall be considered as rendered when such judgment has been entered on the judgment record.[8]

It was equally well understood that money judgments did not become a lien upon personal property until it was "seized in execution."[9] This court required only a bare statutory citation to declare that a plaintiff had no lien against funds being held by a court merely because of a money judgment against the defendant.[10]

Before the 1985 amendment to § 42-371, this court recognized that the "lien of a judgment for child support . . . constitutes a lien the same as other monetary judgments."[11] As early as 1894, the court recognized that judgments for alimony were "made liens upon property the same as judgments in actions at law, and their collection is enforceable in the same manner as other judgments."[12]

It was in the light of this history that the Legislature complied with the federal mandate to enforce child support against personal property. The legislative history this court cites articulated that understanding.

The parties have not cited nor have I found any other statute applying a judgment lien to personal property before

---

[8] § 25-1504.

[9] *Credit Bureau of Broken Bow, Inc. v. Moninger*, 204 Neb. 679, 284 N.W.2d 855 (1979).

[10] See *Ceres Fertilizer, Inc. v. Beekman*, 209 Neb. 447, 308 N.W.2d 347 (1981).

[11] *Action Realty Co., Inc. v. Miller*, 191 Neb. 381, 385, 215 N.W.2d 629, 632 (1974).

[12] *Nygren v. Nygren*, 42 Neb. 408, 411, 60 N.W. 885, 886 (1894).

levy of execution or garnishment. When the Legislature added the provision for a child support judgment lien against "any personal property registered with any county office,"[13] it did so understanding that in other actions, no judgment lien attached to personal property until levy of execution or garnishment.

The 1985 amendment made perfect sense regarding motor vehicles or mobile homes, which have certificates of title. And even in those two instances, the statute does not impose a lien *automatically*, as the State asserts occurred here against the bail deposit. Instead, a child support judgment lien attaches to motor vehicles or mobile homes "upon notation of the lien against the . . . certificate of title."[14] And by reference to another statute, the child support lien statute dictates that such liens on motor vehicles or mobile homes "take priority according to the order of time in which the same are noted by the county treasurer or department."[15] This follows the first-in-time principle of judgment liens attaching to real estate.[16]

As this court's opinion recognizes, child support obligations can be collected from bail deposits under existing law. The 1985 Legislature acted carefully and deliberately in striking a balance by allowing enforcement of judgments against bail deposits by execution or garnishment having priority as of the date of levy.

---

[13] § 42-371(1) (Reissue 2016).

[14] § 42-371(9).

[15] See Neb. Rev. Stat. § 60-164(3) (Supp. 2017).

[16] See *Pontiac Improvement Co. v. Leisy*, 144 Neb. 705, 14 N.W.2d 384 (1944).